Pasquale **MAROTTI**, on behalf of himself and all others similarly situated

v.

Henry C. **WHITE**, individually and as Commissioner of Welfare of the State of Connecticut.

Civ. No. 14926.

United States District Court, D. Connecticut.

May 12, 1972.

David M. Lesser, Stuart Bear, William H. Clendenen, Jr., Frank Cochran, Joseph Garrison, New Haven, Conn., for plaintiff.

Robert Killian, Connecticut State Atty. Gen., James M. Higgins, Asst. Atty'. Gen., Hartford, Conn., for defendant.

Before SMITH, Circuit Judge, BLUMENFELD and CLARIE, District Judges.

MEMORANDUM OF DECISION

FINDINGS OF FACT and CONCLUSIONS OF LAW

BLUMENFELD, District Judge:

In this case, the plaintiff challenges the Connecticut Welfare Department regulation which applies a more restrictive standard for determining the allowance for room and board to those persons receiving categorical assistance who live with relatives than is applied to recipients otherwise similarly situated but residing with non-relatives. He seeks declaratory and injunctive relief against the defendant under 42 U.S.C. § 1983[1] and its jurisdictional counterpart, 28 U.S.C. § 1343(3) and (4),[2] on the grounds that Connecticut State Welfare Manual Vol. 1, Index § 352 at 6, par. 9(b) (hereinafter Manual § 352 par. 9(b)), violates the Supremacy Clause because it is inconsistent with federal statutes, 42 U.S.C. §§ 302(a) (8), 1202(a) (11), and 1352(a) (10), and regulations of the Department of Health, Education and Welfare (HEW), 45 C.F.R. §§ 233.-20(a) (1) and (a) (3) (viii), and also violates the Equal Protection Clause of the fourteenth amendment to the United States Constitution.[3]

I.

The plaintiff, a 57 year old resident of New Haven, Connecticut, has been a welfare recipient since 1961 under the program of Aid to the Permanently and Totally Disabled (AD). For the last nine months, he has resided with his aunt and uncle in a room and board arrangement under which he has been charged $150 monthly. He has been receiving $164.25 monthly from the welfare department.

---

1. Section 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Section 1343(3) and (4) provide:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
\* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

3. In view of the disposition below, the court does not reach the claim of denial of equal protection.

The welfare department regulation here challenged, Manual § 352 par. 9(b), was effectuated August 19, 1971, to "clarify" departmental policy with respect to recipients of assistance under the state programs of Aid to Aged (OAA), Aid to the Blind (AB), and AD. Paragraph 9(b) provides:

"Room and board arrangements with relatives. Such living arrangements must be budgeted for payment of shelter not in excess of a prorated share of actual rent (or carrying charges), light, gas, heat, household supplies or up to the limit of the base rental standard for one person, if this is less. 'Board' is budgeted at the appropriate food cost standard which corresponds to the size of the family with whom the applicant or recipient resides."

Recipients of assistance under these programs who do not live with relatives, but who live in unlicensed private homes, are paid the cost of room and board as charged, up to a maximum of $195 monthly, under the following regulation, also effective August 19, 1971:

"*Private Homes not Requiring a License from the State Department of Health.* These are private homes in which a single individual is accommodated and which also serves (sic) as a home to the provider of the service. The duration and existence of such a board arrangement may be related exclusively to the care of a specific individual and not be publicly available on any continuing basis.

"In such an arrangement, operating costs and the motivation to provide board and room care is (sic) different from that of a private group facility operated by employed salaried personnel.

"These rates in this type of facility can be paid as charged up to $195 per month. This rate is not applicable to the situation of an applicant or recipient living in the home of a relative. For room and board with a relative see Index No. 352 p. 6." Connecticut State Welfare Manual Vol. 1, Index § 352.6(A) (4).

Recipients living in licensed boarding homes or nursing homes are paid on a different basis, with higher maximum payments allowed. See Connecticut State Welfare Manual Vol. 1, Index § 352.6(A) (1)–(3).

As a result of the "clarification" of departmental policy, the plaintiff was informed that effective April 1, 1972, his monthly allowance would be reduced to $80. Thereafter, he instituted this suit, on behalf of himself and other recipients under the AD, OAA and AB programs who are living with relatives,[4] challenging the regulation, Manual § 352 par. 9(b), which resulted in his receiving a smaller amount of monthly assistance for room and board solely because he was living with relatives, on the ground that it violates federal statutory requirements and the equal protection clause of the fourteenth amendment to the United States Constitution. On March 14, 1972, the day of the hearing on the plaintiff's request for a temporary injunction, the defendant announced that the plaintiff was awarded an additional $75 monthly for "essential services." Because the plaintiff seeks an injunction[5] against the enforcement of a state regulation of statewide application on the ground of its unconstitutionality, a three-judge district court was convened, 28 U.S.C. §§ 2281 and 2284, and a hearing on the merits was held April 17, 1972, at which evidence was received and arguments heard. Briefs have also been submitted.

4. The court finds that this case is a proper class action under Fed.R.Civ.P. 23(a) and (b) (2). The class is defined as all welfare recipients under the AD, OAA and AB program who live with non-legally liable relatives.

5. On March 16, 1972, this court granted the plaintiff's request for a temporary injunction.

## II.

█ States administering categorical assistance programs, in order to receive federal funds, must abide by the provisions of the Social Security Act and valid rules and regulations promulgated by HEW. King v. Smith, 392 U.S. 309, 317, 333 n. 34, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). HEW has provided with respect to all categorical assistance programs:

"that payment will be based on the determination of the amount of assistance needed and that, if full individual payments are precluded by maximums or insufficient funds, adjustments will be made by methods applied uniformly state wide." 45 C.F.R. § 233.20(a) (3) (viii).

HEW also requires:

"that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis. . . ." 45 C.F.R. § 233.20(a) (1).

The plaintiff contends that, in the case of a recipient living with a relative, payment is not based on the "amount of assistance needed" and that the determination of need is not made on an "equitable basis," since the department's policy results in a smaller payment for room and board simply because a recipient lives with a relative. We agree.

The defendant contends that its measure of the needs of a recipient is the same, whether or not he lives with relatives. The defendant claims rather that the *cost* of identical needs is lower for a recipient who lives with relatives. The reason for this lower cost to the recipient, the defendant argues, is the absence of the element of profit where a recipient lives with relatives; in his brief the defendant asserts that "Families do not and should not expect to make a profit when they elect to assist blood relatives."

This argument might have merit if the relatives with whom we are here concerned were legally liable for the support of the recipient. But they are not; recipients living with relatives who are legally liable for their support are treated quite differently from the plaintiff and his class. The income of legally liable relatives is taken directly into account in computing welfare benefits. See 45 C.F.R. § 233.20(a) (3) (vi); Connecticut State Welfare Manual Vol. 1, Index § 344.2.

█ The defendant may not assume that a recipient's relatives, not legally liable for his support, will charge less than other persons providing room and board to welfare recipients. To do so violates the purpose of the Social Security Act and specific HEW regulations requiring "that payment will be based on the determination of the amount of assistance needed." 45 C.F.R. § 233.20(a) (3) (viii). King v. Smith, *supra,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Solman v. Shapiro, 300 F.Supp. 409 (D.Conn.), aff'd, 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). The splitting up of the class of private home boarders to discriminate against those boarding with non-liable relatives violates the duty to aid "all eligible individuals." 42 U.S.C. §§ 302(a) (8), 1202(a) (11), and 1352(a) (10), as well as the duty to determine need on "an objective and equitable basis." 45 C.F.R. § 233.20(a) (1). Even the defendant's claim that the department is only removing "profit" is not so, since the new scheme of regulations implemented in August 1971 does not take into account housekeeping expenses. Of course, the person aided could move out to one of the other types of home, at greatly increased cost to the state, but this would go directly against the policy of keeping family units together.[6] The defendant does not deny that if the plaintiff were living with strangers he

---

6. Our concern is not with whether the new policy makes sense from the state fiscal standpoint, but at the same time we wonder whether enough non-liable relatives would be willing to take on the ad-

ded burdens—or indeed be able to—so that the anticipated savings would more than balance the much increased cost of aid to those who are forced into the more expensive commercial establishments.

would be paid room and board as charged, up to $195 per month.

■ The defendant also contends that the case of a recipient living with relatives is distinguishable from the case of a recipient living with non-relatives on the ground that the relative-landlord "with or without the relative boarder . . . will still have the costs of maintaining his family unit . . . ." But we fail to see how that makes any difference, since the category of unlicensed private homes, to which the $195 monthly maximum applies, includes only "private homes in which a single individual is accommodated and which also serves as a home to the provider of the service." Manual § 352.6(A) (4). Although the defendant seeks to distinguish these homes as "commercial establishments,"

> "(t)he duration and existence of such a board arrangement may be related exclusively to the care of a specific individual and not be publicly available on any continuing basis." *Id.*

It is plainly "inequitable," and as such violative of HEW regulations, for the defendant to discriminate against the plaintiff and his class on a factual basis which is illusionary.

■ Finally, the defendant argues that the case of a recipient living with relatives is distinguishable because grants for "essential services," such as help in bathing and dressing, are available to recipients living with relatives, but are not available to recipients living in the home of non-relatives, who, the defendant states, "would probably be shifted to a licensed rest home" if they required such services.

While this distinction might be thought to raise a question of discrimination against those recipients living with non-relatives, it has no relationship to the question before the court, which is whether the defendant may discriminate against a recipient with respect to assistance for *room and board,* simply because he lives with relatives.

For the foregoing reasons, so long as the defendant Commissioner White continues to receive federal funds, he is enjoined from enforcing Manual § 352 par. 9(b), which discriminates against recipients in the payment of assistance for room and board, on the ground that they live with non-legally liable relatives, because that provision is invalid under federal statutes, 42 U.S.C. §§ 302(a) (8), 1202(a) (11), and 1352(a) (10), and under HEW regulations, 45 C.F.R. § 233.-20(a) (1) and (a) (3) (viii).

The defendant is ordered to determine the assistance for room and board care due these recipients of assistance under the AD, OAA and AB programs living with non-legally liable relatives in their private homes under the terms of Connecticut State Welfare Manual Vol. 1, Index § 352.6(A) (4).

The foregoing constitutes the court's findings of fact and conclusions of law. Fed.R.Civ.P. § 52(b).