[S.F. Nos. 23012, 23013. In Bank. July 2, 1974.]

WILLIAM WAITS et al., Plaintiffs and Respondents, v.
DAVID B. SWOAP, as Director, etc., et al., Defendants and Appellants.

888

COUNSEL

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and David J. Bowie, Deputy Attorney General, for Defendants and Appellants.

Clifford Sweet, Hayden Curry, Marjorie Gelb, Denis Clifford, William R. Petrocelli, Jay-Allen Eisen, Ralph Santiago Abascal and Edmund S. Schaffer for Plaintiffs and Respondents.

Charles C. Marson, Joseph Remcho, Karlton, Blease & Vanderlaan and Coleman A. Blease as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

**TOBRINER, J.**—This is a companion case to *Cooper* v. *Swoap,* decided this day, *ante,* page 856 [115 Cal.Rptr. 1, 524 P.2d 97], and presents analogous questions as to the validity of an administrative welfare regulation promulgated subsequent to the Welfare Reform Act of 1971. In *Cooper* we have held that Regulation 44-115.8, authorizing designated deductions from grants of recipients of aid to families with dependent children (AFDC) who share housing with recipients of "adult aid" benefits, is incompatible with the governing legislative provisions and therefore invalid. In this case we address a comparable regulation, Regulation 44-115.611, which authorizes similar deductions from welfare grants of AFDC recipients who share housing with "nonneedy" relatives.

As discussed below, we have concluded that, as in *Cooper,* the instant regulation conflicts with the controlling statutes and cannot stand. Initially,

we point out that just as in *Cooper* the regulation at issue emanates from an administrative conception of "noncash economic benefits" which is incompatible with the "flat grant" system of welfare payments established by the 1971 welfare reform legislation. Second, we explain that the benefits at issue cannot properly be characterized as "income" which may be deducted from a recipient's grant. Finally, we demonstrate that even if such benefits could properly be considered "income," the present regulation would still be invalid since it does not measure the actual value of the benefits received by a recipient but instead assigns a fictional value to such benefits. Accordingly, we affirm the trial court's decision invalidating the regulation at issue.

1. *The facts of the instant case.*

Plaintiffs Mr. and Mrs. Waits receive AFDC benefits on behalf of the six needy children (three grandchildren and three great-grandchildren) whom they have voluntarily taken into their home. Under Welfare and Institutions Code section 11450 the six children were entitled at the time this action was commenced to a basic grant of $360 per month; as a result of the promulgation of Regulation 44-115.611, however, the grant was reduced to $259 per month (a $101 deduction). Regulation 44-115.611 had an equally significant effect on the grants received by the families of the two other individual plaintiffs in this case. The grant to the three needy children (two nieces and one nephew) in the care of the Browns was reduced from $235 per month to $140 per month (a $95 deduction); the grant to the needy grandchild in the care of the Luceys was reduced from $115 per month to $48 per month (a $67 deduction).[1]

Seeking to avoid the harsh effects of these reductions, the three families instituted the instant class action, attacking Regulation 44-115.611 as incompatible with the controlling state and federal statutes, and seeking injunctive and declaratory relief. The trial court granted plaintiffs' request

[1]As in *Cooper,* all the figures utilized in this opinion refer to the figures in force at the time this action was initiated. Although the amounts have been subsequently altered in minor respects in response to changes in the cost of living, such changes have no bearing on the validity of the regulation in question.

The reductions cited in the text reflect the fact that at the time this suit was commenced the Alameda County Welfare Department had interpreted the challenged regulation as requiring that grants to children living with nonneedy relatives be reduced by the *full* amount of the state's housing and utility "allowance"; the county gave no credit for additional out-of-pocket expenses incurred by the nonneedy relative. Although the state director has since ordered the county to afford such a credit, as we explain *infra,* this credit in no way cures the significant defects of the challenged regulation.

for a preliminary injunction and subsequently entered an order declaring the contested regulation invalid and prohibiting its future enforcement. Defendant state and county welfare authorities appeal from the judgment.

In *Cooper* v. *Swoap, supra, ante,* pages 861-863, we have reviewed at some length the historical background of the Welfare Reform Act of 1971, and the principal innovations introduced by that legislation. Regulation 44-115.611, the regulation at issue here, was one of a series of regulations which the State Department of Social Welfare (department) promulgated as an ostensible implementation of the 1971 act. In substance, the challenged regulation provides that whenever an AFDC recipient has voluntarily been given a home by a "nonneedy" relative,[2] the department will hold that such child has received a designated "income" in the form of housing and utility benefits, which "income" is to be deducted from the child's welfare grant.[3] Although the rationale of the regulation is not explicitly articulated, the regulation appears to rest upon the assumption that a nonneedy relative who agrees to take an AFDC child into his home is necessarily both willing and able to make a gift of housing and utilities to that child; moreover, the regulation further asserts that such housing and utility benefits are "income" to the AFDC recipient which may be deducted from his basic flat grant.

The question presented is whether this regulation is consistent with the prevailing legislative scheme. For the reasons reviewed below, we conclude that the regulation is incompatible with the governing statutes and is therefore invalid.

---

[2]Under the department's regulation, a relative is considered "nonneedy" so long as, he is not personally receiving benefits from any categorical aid program; the regulation also excludes natural or adoptive parents and stepfathers from the "nonneedy relative" classification. (Reg. 44-115.6.) As the financial circumstances of the present "nonneedy" plaintiffs demonstrate, however, the regulation applies to many who are certainly poor by any standard other than welfare eligibility. For example, Mr. and Mrs. Waits possess as their sole source of income social security payments and a pension to Mr. Waits, the combined total of which amounts to less than $5,000 annually; Mr. Lucey is presently receiving unemployment benefits. All the families have stated by affidavit that under the grant reduction, neither the couples themseleves nor the children in their care were getting enough to eat and that the families could no longer afford to clothe the children properly.

[3]Regulation 44-115.611 provides: "The excess of the in-kind income value [i.e., allowance] for housing and utilities [set forth in Regulation 44-115.9] . . . for the appropriate size Family Budget Unit over the increased cost of living and utilities to the nonneedy relative caused by the presence of the AFDC child(ren) in his household shall be considered a contribution in kind to the Family Budget Unit."

2. ■ *Regulation 44-115.611, resting as it does on the department's "noncash economic benefit" concept, is completely at odds with the flat grant system of AFDC benefits established by the 1971 legislation.*

Although, unlike the regulation at issue in *Cooper,* the instant regulation was not specifically rejected by the Legislature,[4] Regulation 44-115.611 shares all of the other fatal defects exhibited by the regulation invalidated in *Cooper.* The similarities between the two regulations stem from the fact that the instant regulation is simply another variation on the department's "noncash economic benefit" theme, a theme which, as explained in *Cooper,* is fundamentally incompatible with the "flat grant" system of welfare benefits adopted by the Legislature in 1971. Thus, although the instant regulation seeks to reduce welfare payments on the basis of reduced housing and utility needs of recipients living with nonneedy relatives, such reduced needs, if they in fact exist, have already been taken into account by the Legislature in computing the flat grant figures of section 11450.[5] Consequently, if approved, the challenged regulation would in reality effect an improper "double deduction" of welfare benefits for those recipients who happen to live with nonneedy relatives.

In singling out children living with nonneedy relatives for disparate treatment, the instant regulation directly conflicts with the legislative mandate that a recipient's reduced need does not provide a basis for reducing the basic amount of the legislatively determined flat grant. As with the regulation at issue in *Cooper,* the legislative subcommittee reviewing the implementation of the 1971 welfare legislation has condemned the present regulation as contrary to the statutory scheme. (Senate-Assembly Subcommittee on Implementation of Welfare Reform, Report to the Legislature (March 17, 1972) p. 21.) We agree with the subcommittee's conclusion that "[t]here is no legal basis in the Welfare Reform Act for [the regulation's] reduction." (*Id.*)

---

[4]To our knowledge, neither the Burgener Bill (Sen. Bill No. 545 (1971 Reg. Sess.)), nor any other welfare reform proposal considered in 1971, contained a provision analogous to the instant regulation; the Legislature's "non-rejection" of the matter thus simply reflects the fact that the issue was never presented to it.

[5]Prior to 1971, AFDC recipients living with "nonneedy" relatives received the same treatment as all other recipients. Their housing costs were paid in the amount of their pro rata share of their living arrangement *without regard* to the persons with whom they lived; there was no assumption that they received free housing and utilities simply because their relatives had agreed to take them into their homes. As we explained in *Cooper,* in setting the flat grant figure of section 11450 the Legislature averaged the needs of all recipients under the past practice, and consequently such figures took account of any savings enjoyed by recipients living with nonneedy relatives.

3. *The housing and utility benefits at issue do not constitute "income" within the meaning of Welfare and Institutions Code section 11450.*

The department again contends, of course, that the regulation is not contrary to the legislative scheme because it represents a reasonable measure of a recipient's "in-kind" income, which under section 11450, must be deducted from the fixed grant figure. The department's characterization of such benefits as "income," however, is no more persuasive in this context than in *Cooper*.

 As we explained in *Cooper*, "noncash economic benefits" in general, and "shared housing" in particular, have never been considered deductible "income" throughout the entire history of California welfare programs, and nothing in the 1971 welfare legislation indicates that the Legislature intended to change that approach. Further, the report of the Legislative Analyst, predicting that the 1971 act would effect no saving in substantive grant payments, confirms the conclusion that the Legislature did not intend to transform these benefits into deductible income. (See *Cooper* v. *Swoap, supra, ante,* p. 862, fn. 5.)

Moreover, insofar as the department's characterization of such benefits as "income" rests upon an assumption that nonneedy relatives have made a "gift" of housing and utility resources, the department's position suffers from an even more fundamental defect. The "nonneedy" relatives covered by the present regulation are under no legal duty to support the children whom they have voluntarily taken into their homes. ██ ██ The regulation at issue, however, totally ignores this important fact, and *conclusively presumes* that such relatives, by agreeing to take such children into their homes, are both willing and able to provide the children with free housing and utilities; thus, even if a relative disclaims any donative intent, the regulation treats the housing and utilities as having been given, free of charge, to the AFDC recipients.[6]

---

[6]The dissenting opinions share the regulation's defect in this regard, asserting throughout that the challenged regulation only takes into account "free" housing and utilities afforded AFDC recipients by nonneedy relatives. The dissent never comes to grips with the fact that the regulation conclusively presumes such housing and utilities to have been given free of charge, even if the nonneedy relative explicitly disclaims any donative intent or is financially unable to make such a gift.

Of course, if a nonneedy relative does wish to provide a recipient with free housing and utilities, the department can consider such donation as "in kind" income and can deduct an amount, equal to the *actual* value of the housing and utilities provided, from the recipient's welfare grant. (See former Reg. 44-115.62.) Without an explicit indication of donative intent, however, "[t]he [state welfare department] may not assume

In assigning "income" to an AFDC recipient even though the nonneedy relative with whom he lives may be neither able nor willing to donate such "income," the present regulation conflicts directly with the teaching of the recent United States Supreme Court decisions of *King* v. *Smith* (1968) 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128] and *Lewis* v. *Martin* (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282]. In both *King* and *Lewis* the court struck down provisions which, like the instant regulation, *assumed* that income or resources of an individual not legally obligated to support the AFDC recipient were available for the recipient's support. Indeed, more recently, several federal district courts have applied *King* and *Lewis* to invalidate administrative practices quite similar to the regulation at issue here. (*Jenkins* v. *Georges* (W.D.Pa. 1969) 312 F.Supp. 289; *Marotti* v. *White* (D.Conn. 1972) 342 F.Supp. 823; *Boucher* v. *Minter* (D.Mass. 1972) 349 F.Supp. 1240; cf. *Hurley* v. *Van Lare* (S.D.N.Y. 1973) 365 F.Supp. 186.) As the three-judge court in *Jenkins* declared: "[W]hether the relationship is one of stepfather, relative or total stranger, the test is simply whether the substitute parent is *required by state law* to furnish the support; if he is not, then the state may not, solely by virtue of the substitute parent relationship, *assume* a contribution to the child's support by some presumption of availability of income." (Italics added.) (312 F.Supp. at p. 292.)

4. ■ *In any event, the regulation is invalid because it does not measure the actual value of the benefits received by a recipient.*

Finally, even if it were permissible to treat the housing and utility resources at issue here as "income" to a recipient, the present regulation would be invalid because it fails to measure the *actual* value of the benefits received by a recipient, but instead assigns a fictional value to such benefits. As in *Cooper,* the instant regulation determines a recipient's income primarily on the basis of the department's own "allowance" figures; under the present regulation "income" is defined as the difference between the appropriate "allowance" figure and the actual additional out-of-pocket expenses incurred by the nonneedy relatives as a result of the child's presence in the home. Thus, if the nonneedy relatives incur no *additional* out-of-pocket expenses, the recipient's income is automatically and conclusively set at the department's allowance figure, *regardless of the actual value of the housing and utility benefits which a recipient in fact receives.*[7]

that a recipient's relatives, not legally liable for his support, will charge less than other persons providing room and board to welfare recipients." (*Marotti* v. *White* (D.Conn. 1972) 342 F.Supp. 823, 826.)

[7]While the "credit" given for actual out-of-pocket expenses would in some cases ameliorate the harshness of the regulation's effect, such credit would in no way cure

As we stated in *Cooper*: "No matter how accurately an allowance figure may reflect the *average* cost of housing and utilities for welfare recipients throughout the state, it is still an impermissible presumption as to the value of these items received by any one recipient. Only the *actual value* of housing and utilities benefits received could possibly constitute income to the recipient, and this the regulation does not measure." (Original italics; fn. omitted.) (*Cooper* v. *Swoap, supra, ante,* at p. 870.)

### 5. *Conclusion.*

As discussed above, we have concluded that the challenged regulation is incompatible with the provisions of the Welfare Reform Act of 1971 and is consequently invalid. Indeed, the regulation at issue in the instant case is particularly invidious, for it not only contravenes the "flat grant" approach mandated by the 1971 legislation, but, in singling out AFDC children living with "nonneedy relatives" for reduced grants, it undermines one of the central objectives of the entire AFDC program, *"the purpose of encouraging the care of dependent children* in their homes or *in the homes of relatives."* (Italics added.) (42 U.S.C. § 601; see Welf. & Inst. Code, § 11205.)

The objective of the challenged regulation is apparently to reduce state expenditures for AFDC children at the expense of relatives who willingly take such children into their homes. In promulgating this unauthorized measure, the department is in reality gambling that close relatives acting as caretakers will feel a moral obligation to keep an AFDC child even though the child can no longer contribute the AFDC grant which the Legislature guaranteed. If the department "wins" its gamble, the state will save money but only at the expense of depriving children of essential need items and subjecting their generous relatives to unwarranted hardships. If the department loses its gamble, as is all too possible,[8] the children will lose

---

the regulation's fundamental defects. Under the regulation's terms, the state's housing and utility allowance, rather than the actual value of the benefits received by a recipient, constitutes the basic "income" figure; although the recipient can reduce the size of his purported "income," and the consequent reduction in his grant, if his nonneedy relative incurs additional out-of-pocket expenses, the department never considers the actual value of housing and utility benefits as distinct from out-of-pocket expenses.

[8]In testimony at an Assembly Welfare Committee hearing on foster care, September 7, 1972, Mrs. Mary Charles of the Santa Clara County Department of Social Services categorized economic distress as a major contributory factor to family breakdown. She focussed on children living with nonneedy relatives as a "high-risk population group newly created by the State Department of Social Welfare." Mrs. Charles testified that her office labeled this group "high-risk" because "heretofore the homes of relatives had been looked upon as alternatives for foster homes or institutional care for both

the close family environment sought to be achieved by the act and the state will have to pay the higher cost of foster care.

In essence, the department has so enmeshed itself in fictitious and misleading labels for the sake of reducing welfare costs that it has obfuscated the purpose of the underlying statute: the preservation, so far as possible, of the family unit, and the more fundamental purpose of the preservation of the health of the state's children, the potential leaders of tomorrow.

The judgment of the superior court, declaring Regulation 44-115.611 invalid and enjoining its enforcement, is affirmed.

Wright, C. J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.**—It may come as a surprise to the Legislature, and to the taxpayers of this state, that by reason of the majority's holding herein, a *full* welfare grant must be paid to relatives caring for a dependent child, despite the fact that these persons do not themselves qualify for aid (and, indeed, may be wealthy) and despite the fact that they may incur no increased costs whatever in boarding the child. In my view such a result is wholly irrational: Welfare is payable to persons "in need thereof" (Welf. & Inst. Code, § 10000), and a child who is cared for by nonneedy relatives is not an apt recipient of public funds.

As I explained in my dissent in *Cooper v. Swoap, ante*, page 873 [115 Cal.Rptr. 1, 524 P.2d 97], the department quite properly has enacted regulations taking into consideration the fact that certain welfare recipients may have regular economic advantages not available to other recipients, advantages which must be evaluated and considered in calculating the size of the welfare grant. The instant regulation (44-115.611) assigns to a child an amount of "in-kind income" to reflect the fact that, unlike other AFDC recipients, he receives free housing and utilities. Under the majority's analysis, such a child must be paid the *full* AFDC grant specified by statute for dependent children. The department's regulation, however, recognizes the impropriety of paying public funds to nonneedy persons and limits the amount of the grant to such persons.

social and financial reasons. We are already losing some of these relatives as child-caring people; we have been unable to recruit some others who might have been available had their costs of caring for the children been covered. [¶] The reduced payment, $48 per month . . . provides hardly enough money to feed a teenager. It is a tremendous hardship [on these relatives]. . . . The State Department of Social Welfare's Regulation 44-115.611 provid[ing] that the child care of housing and utilities are 'income in kind' contributed by the relatives is simply not realistic." (Pp. 46-47.)

The regulation is based upon the premise that such children commonly reside in a spare, unused room in the home or do not otherwise significantly increase the housing and utilities cost to the relative. The regulations assign a specified value (in dollars per month) to the resources of housing and utilities available to each child living with nonneedy relatives. For example, the combined value of both items to one child is $67 per month, to two children $87 per month, and to three children $95 per month. (Regs. 44-115.91, 44-115.92.) Regulation 44-115.611 does, however, acknowledge that in some cases the child's presence in the home of nonneedy relatives may actually increase their housing and utilities cost and, accordingly, provision is made for reducing the specified "in-kind income" values to that extent. The excess, if any, of the in-kind income value over the increased cost to the nonneedy relative is considered in-kind income, to be deducted from the AFDC grant specified in section 11450 of the Welfare and Institutions Code.

For example, the grant specified for a family having no outside income and consisting of three needy, eligible persons would be $237 per month. This figure includes, of course, an allowance for housing and utilities. (See Welf. & Inst. Code, § 11452, subds. (1) and (4).) But if these three persons consisted of dependent children living with nonneedy relatives, the regulations would assign an in-kind income to them of $95 per month, on the basis that they are receiving free housing and utilities unavailable to an ordinary needy AFDC family. If, however, the nonneedy relatives had to move to larger quarters to accommodate the children in their care, with a resultant additional housing and utilities expense of $80 per month, only $15 would be deducted from the AFDC grant.

The majority assert that the housing and utilities voluntarily furnished by nonneedy relatives to the dependent children in their care should not, under federal or state law, be considered to be a "resource" or "income" of the child for purposes of reducing the size of the AFDC grant. Yet the cases indicate the contrary rule. First of all, the United States Supreme Court has held that HEW regulations which permit the states to consider currently available "income" or "resources" of a child in determining eligibility and amount of aid "clearly comport" with the federal act. (*Lewis* v. *Martin,* 397 U.S. 552, 555 [25 L.Ed.2d 561, 564, 90 S.Ct. 1282]; *King* v. *Smith,* 392 U.S. 309, 319, fn. 16 [20 L.Ed.2d 1118, 1127, 88 S.Ct. 2128].)

*Lewis* held that the states may not *conclusively* presume that a dependent child's needs are reduced by the amount of income available from a "man in the house," (such as a stepfather or other adult male assuming the role

of spouse to the mother), whether or not such income is in fact available or actually used to support the child. (397 U.S. at pp. 554-560 [25 L.Ed.2d at pp. 564-567]; see also *Jenkins* v. *Georges,* 312 F.Supp. 289; *Marotti* v. *White,* 342 F.Supp. 823.) As stated in *Lewis* (pp. 559-560 [25 L.Ed.2d p. 567]), "*In the absence of proof of actual contribution,* California may not consider the child's 'resources' to include either the income of a non-adopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS [man assuming role of spouse] —whatever the nature of his obligation to support." (Italics added.) By clear implication, if a child actually receives income or other resources from a relative or friend, regardless of preexisting support duty, the amount or value thereof may be taken into account in determining aid payments. (See *People* v. *Lockett,* 25 Cal.App.3d 433 [102 Cal.Rptr. 41]; *County of San Diego* v. *Montgomery,* 23 Cal.App.3d 174 [99 Cal.Rptr. 921].)[1]

Certainly, if a dependent child received an outright gift of $50 each month from nonneedy relatives for housing and utilities, that amount could be deducted from the grant the child would otherwise receive. No cogent reason appears why a noncash economic benefit (such as free housing and utilities) should not be similarly treated by assigning a cash value thereto and deducting that value from the grant. The term "resources" in the state and federal statutes is broad enough to include such noncash economic benefits, and nothing in state or federal law prevents the department from making a reasonable estimate of the value of those benefits for purposes of adjusting the size of the AFDC grant. .

Significantly, plaintiffs have not asserted that the department's "in-kind income" values are unreasonably large. Undoubtedly plaintiffs could have alleged and attempted to prove at trial that the department's estimates of in-kind income (e.g., $67 per month for one child for housing and utilities) are unrealistic or unreasonably large, resulting in an excessive deduction from the AFDC grant. On the present record, however, and in the absence of such a showing, we must assume that the department properly discharged its statutory responsibilities to implement, interpret and make specific the law it enforces (Welf. & Inst. Code, § 10554) and to establish rules and regulations fixing uniform statewide standards for the administration of aid programs (*id.,* §§ 10604, 11452.)

---

[1]The department has submitted to this court a copy of a letter from Phillip J. Rutledge, Acting Administrator of HEW, dated March 27, 1973, stating that the regulations at issue have been reviewed by HEW and are in conformity with federal law and regulations. We have, in past cases, noted that "HEW's views are, of course, subject to considerable deference by this court." (*County of Alameda* v. *Carleson,* 5 Cal.3d 730, 742, fn. 13 [97 Cal.Rptr. 385, 488 P.2d 953].)

Further, as explained above, the department has taken into account the possibility that the presence of a child in the home of a nonneedy relative may increase the housing and utilities expense to the relative, and has provided for an appropriate credit. This aspect of the regulation also appears to comport with federal law, which contemplates that aid payments are to be made not only on behalf of the dependent child, but also "to meet the needs of the relative with whom the dependent child is living." (42 U.S.C. § 606, subd. (b).) An actual increase in costs to the relative justifies a corresponding credit to the value of the resources furnished by them. Once again, plaintiffs have not attempted to show that the department has improperly limited the kinds of increased costs which will give rise to a credit against the grant reduction.

Plaintiffs contend that the department has improperly created a rebuttable presumption that the child's presence does not increase the cost of housing and utilities to nonneedy relatives. Plaintiffs suggest that in the ordinary case such costs do exist. Even if we assume, however, that the department's presumption may be unrealistic in some cases, nevertheless it seems reasonable to impose upon plaintiffs the burden of establishing their increased costs for such information is obviously more readily available to them than to the department. (See *People* v. *Gilbert,* 1 Cal.3d 475, 484, and fn. 14 [82 Cal.Rptr. 724, 462 P.2d 580]; *Morris* v. *Williams,* 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].) As we noted in *Gilbert,* a case involving similar issues, although conclusive presumptions face frequent constitutional attack (see, e.g., *Lewis* v. *Martin, supra,* 397 U.S. 552, 554-560), rebuttable presumptions are often sustained on the basis that their effect is not conclusive. We further pointed out in *Gilbert* that "Unquestionably, the man [assuming a role as spouse] and the AFDC family have far better information than is available to the Department of Social Welfare as to how the man actually spends his money. In order to overcome the attendant difficulties in calculating the man's contributions [to the AFDC family], the department could reasonably establish a rebuttable presumption that all the man's income after certain deductions had been given to the AFDC family." By a parity of reasoning, the department should be permitted to establish a rebuttable presumption that the child's presence in the home of nonneedy relatives has not significantly increased their housing and utilities costs.

The majority suggest that the "in-kind income" approach of the department's regulations, being in essence an attempt to adjust aid payments in recognition of the differing needs of various classes of AFDC recipients, improperly alters or amends the fixed statutory schedule of minimum needs set forth in section 11452 of the Welfare and Institutions Code. Yet the

schedule of minimum needs in section 11452 is used only for purposes of determining the *eligibility* for aid of a family with dependent children. Regulation 44-115.611 does not purport to affect or alter the statutory standards for eligibility; that regulation only comes into play to measure the amount of aid to be paid to an otherwise eligible recipient or family. And although the regulation does indeed reduce the statutory maximum grant specified in section 11450, such reduction is authorized by the requirement of that section that the recipient's outside "income" (which includes currently used "resources" under § 11008) be deducted from the maximum grant. In other words, by reason of the requirement in state and federal law that an aid recipient's outside income and resources are to be taken into account in determining the size of the grant, the department *is* authorized to consider the "needs" of the recipient, to the extent those needs are reduced by virtue of such income or resources.

The majority assert that the department's regulations conflict with the general policy underlying the federal act to encourage the care of dependent children. The preamble section to the federal act's provisions regarding the AFDC program states that the program was initiated "For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each state to furnish financial assistance and rehabilitation and other services, *as far as practicable under the conditions in each state,* to *needy* dependent children and the parents or relatives with whom they are living . . . ." (Italics added; 42 U.S.C. § 601.) However, contrary to the majority's suggestion, it is not wholly clear that the in-kind income regulations at issue actually discourage nonneedy relatives from caring for dependent children, for such relatives, regardless of their need, do receive an AFDC grant to assist them in such care, a grant which is reduced only to the extent that the specified in-kind values for housing and utilities exceed the additional expenses incurred for those items by reason of the child's presence in their home.

Moreover, as indicated by the italicized language of the federal provision quoted above, it is recognized that practical considerations may justify reasonable limitations upon the amount of aid available to various classes of AFDC recipients. As explained in a recent decision of the United States Supreme Court, the states have considerable latitude in allocating AFDC resources and may establish their own standards of eligibility and level of aid payments so long as no violation of specific provisions of the federal act occurs; there is no requirement in the act that the states must maximize individual eligibility for benefits. (*Jefferson* v. *Hackney,* 406 U.S. 535, 541-543 [32 L.Ed.2d 285, 292-294, 92 S.Ct. 1724].) I find no provision

of state or federal law which requires equal treatment of children living, respectively, with needy and nonneedy relatives.

Plaintiffs contend that the department's regulations violate constitutional equal protection principles by providing for a reduced grant to children who live with nonneedy relatives. Plaintiffs evidently complain that the regulations do not take into account the possibility that some children living with needy relatives may have less need for assistance but nevertheless receive a larger aid payment. But as *Jefferson* v. *Hackney, supra,* 406 U.S. 535, points out, equal protection principles are not violated merely because a particular classification may be imperfect in some of its applications; so long as the classification has a rational basis and does not result in an invidious discrimination, a state's efforts in allocating assistance benefits are not subject to a "constitutional straitjacket." (*Id.,* at pp. 546-547 [32 L.Ed.2d at pp. 295-296].) Since budgetary constraints do not allow the payment of the full standard of need for all AFDC recipients, the department properly may conclude that *generally* children living with nonneedy relatives are more able to bear the hardship of a reduced grant than children living with needy relatives. (*Id.,* at p. 549 [32 L.Ed.2d at p. 297].)

I would hold that the department's Regulation 44-115.611 is not invalid under federal or state law, and that accordingly the trial court erred in prohibiting further enforcement of that regulation.

McComb, J., concurred.

**CLARK, J.**—In addition to incorporating by reference the discussion of in-kind income contained in my dissent in *Cooper,* I offer corrections to misstatements in the majority opinion in this case.

The majority states (*ante,* p. 892, fn. 5) that prior to 1971, AFDC recipients living with nonneedy relatives received the same treatment as all other recipients. This is incorrect. See, for example, Regulation 44-115.162 of 1 July 1967, which specifies: "When a child lives with a nonneedy relative, the amount by which the relative is able and willing to meet the child's total need is net income." This statement was repeated in department regulations issued on 1 December 1967 (44-115.62) and on 1 June 1969 (44-115.72). On 1 July 1970 this language was amended by regulation 44-115.7 entitled "Contribution by a nonneedy relative. When the contribution made in-kind by a nonneedy relative is expressed in terms of an amount to be applied against total rather than specified items of need in the assistance standard, such amount is net income to the AFDC children.

For example, a nonneedy relative specified that the contribution will be equal to all but $50.00 of the child's need. The difference between the child's allowable need and $50.00 is net income to the child." This regulation, renumbered as 44-115.6 on 1 December 1970, was in effect at the time the Welfare Reform Act was adopted. It allowed the nonneedy relative the option of estimating the value of the total support provided to the child, and such value was considered net income to the child. In fact, the 44-115.612 regulation at issue repeats the substance of the regulations of 1 December and 1 July 1970. Thus, the department, in adopting the regulation in issue, was merely continuing the existing state policy of taking into consideration as income the in-kind value of support and maintenance furnished by nonneedy relatives.

The majority intimates (*ante,* p. 894) that the regulation at issue is in some way defective in that it reimburses the nonneedy relative only for out-of-pocket expenses. The majority states (*ante,* p. 894): "Thus, if the nonneedy relatives incur no *additional* out of pocket expenses, the recipient's income is automatically and conclusively set at the department's allowance figure, *regardless* of the actual value of the housing and utility benefits which a recipient in fact receives." (Fn. omitted.)

The majority's implication is that nonneedy relatives ought to be reimbursed beyond the costs of supporting the recipient. Whether or not providing such a windfall to nonneedy relatives is wise social policy, as the majority evidently believes, it is not the law. Welfare and Institutions Code section 11006 provides: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person."

Unlike the situation in *Cooper, supra,* where the AFDC recipients resided with adult aid recipients and therefore constituted a recipient group, the the nonneedy relative incurs no *additional* out of pocket expenses, the resided part of the recipient group. Section 11006 clearly provides that the grant is not intended to benefit any person outside the recipient group and therefore restricts the nonneedy relative to reimbursement for his out-of-pocket costs.

In summary, the result obtained by the regulation in issue is not only consistent with past and current welfare practice but is required by statute.

I would uphold regulation 44-115.611.

Appellants' petition for a rehearing was denied August 7, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.