[Civ. No. 14865. Third Dist. May 28, 1975.]

COMMITTEE OF THE RIGHTS OF THE DISABLED et al.,
Plaintiffs and Appellants, v.
DAVID B. SWOAP, as Director, etc., et al.,
Defendants and Respondents.

506

**COUNSEL**

Daniel M. Luevano, Rosalyn M. Chapman, Philip L. Goar and Dorothy T. Lang for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Joseph Garcia, Deputy Attorneys General, for Defendants and Respondents.

OPINION

EVANS, J.—Plaintiffs appeal from a judgment which denied them declaratory and injunctive relief in their individual and class action challenging the constitutionality of a departmental regulation interpreting and implementing subdivision (e) of section 12200 of the Welfare and Institutions Code. The judgment declared the administrative regulation to be constitutionally valid.

The essential facts are undisputed. Plaintiffs Piontkowski, Schneider and Burbank are each disabled persons as defined in section 12050 of the Welfare and Institutions Code. Plaintiff Committee of the Rights of the Disabled is a nonprofit corporation whose membership includes recipients under the Supplemental Security Income Program and the complementary State Supplementary Program[1] for Aged, Blind and Disabled. Defendants are David B. Swoap (now Jerold Prod, acting director), as Director of State Department of Benefit Payments, and the State Department of Benefit Payments.

The Social Security Act as amended in 1972 created a new program known as the Supplemental Security Income Program (SSI), guaranteeing monthly federal payments to needy, blind, aged, and disabled persons. The amended SSI Program also invited the states to pay additional money to the recipients.

In 1973, in response to the federal legislation, the California Legislature repealed chapter 3 of the Welfare and Institutions Code, designated "Old Age Security Law" and enacted in place thereof new chapter 3 entitled, "State Supplementary Program for Aged, Blind and Disabled." Payments made pursuant to that chapter are referred to as state supplemental payments (hereafter SSP).

Section 12200 of the Welfare and Institutions Code as adopted in 1973 provides in relevant part as follows: "An aged, blind or disabled applicant or recipient shall be paid an amount of aid which when added to his federal benefit received under Part A of Title XVI of the Social Security Act and other nonexempt income and resources, equals the following:

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(e) For an aged or disabled applicant or recipient . . . or for a married couple . . . *whose living arrangement prevents preparation of his or their*

---

[1] 42 United States Code, sections 1381-1385.

*meals at home* shall be entitled to an. allowance of twenty-five dollars ($25) per month for an individual and fifty dollars ($50) per month for a married couple in addition to any other amount he is entitled to under this chapter." (Fn. omitted; italics added.)

Defendants adopted regulation EAS 46-326 interpreting and implementing subdivision (e) of section 12200 of the Welfare and Institutions Code. That regulation provides in pertinent part: "The aged or disabled recipient individual or couple, both of whom are aged or disabled, whose living arrangement prevents the preparation of meals at home shall be entitled to an allowance of $25 for an individual or $50 for a couple in addition to any other payments for which he or they are eligible.

"The county welfare department will be responsible for certification of the living arrangement [to the Social Security Administration]. *The criteria shall be availability and adequacy of cooking and food storage facilities . . . ."* (Italics added.)

The living arrangements of each of the individual plaintiffs provided adequate cooking and food storage facilities; and applying the adopted criteria, they were eliminated from eligibility for the "meals-out" allowance.

Plaintiffs do not contend the defendants exceeded their authority in adopting regulation EAS 46-326 as an implementing tool of subdivision (e) of section 12200 of the Welfare and Institutions Code; they do contend, however, that the regulation as adopted is not in conformity with the statute and is, therefore, void; that it denies the plaintiffs and all persons similarly situated due process under the California and federal Constitutions and that it is violative of the equal protection provisions of the Constitution.

I

We are called upon to determine whether or not departmental regulation EAS 46-326 is consistent, reasonable and in harmony with its statutory source, subdivision (e) of section 12200 of the Welfare and Institutions Code. Administrative regulations promulgated under the aegis of a general statutory scheme are only valid insofar as they are authorized by and consistent with the controlling statutes. (*Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97].)

██ We must also determine whether or not regulation EAS 46-326, as adopted, violated the accepted rules of statutory construction so as to constitute an arbitrary or capricious action on the part of the defendants. In making such determination, we do not substitute our judgment for that of the defendants. We must let them work out their regulatory and implementing problems with as little judicial interference as possible. As was stated in *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83], "All of the parties to this litigation recognize the intricate and technical nature of the subject matter as well as the expertise and full technical knowledge which its administration requires. It would be presumptuous of a court to claim such skill; it will not, therefore, superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision."

In order to make the necessary determination, we initially employ one of the several rules of statutory construction that where a statute (regulation) is susceptible of different constructions, the one that leads to the more reasonable result will be followed. (*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 630 [197 P.2d 543].) As we view the whole of the law (Welf. & Inst. Code, §§ 12000-12400), the reasonableness of the code provisions and the departmental regulation is obvious. Recipients whose place of residence have adequate food storage and preparation facilities are provided "in-home assistance" for food preparation, eliminating the burden of leaving home for their meals. For those disabled recipients whose place of residence is without food storage or preparation facilities, a meals-out allowance in addition to other benefits is provided. In viewing the provisions of the act (State Supplementary Program for Aged, Blind and Disabled), as well as the questioned departmental regulation, the most reasonable and obvious conclusion is that the Legislature intended that disabled recipients such as plaintiffs be provided for by in-home services rather than meals-out allowances where possible. In revising this social program, the Legislature elected to eliminate the previous provisions under which plaintiffs and those similarly situated had previously received a meals-out allowance only. We find this reasonable result approach to be in harmony with the stated intent of the Legislature as contained in the Legislative Counsel's Digest of the act. It provides in part as follows: "[The program] [r]evises the social service program for such recipients, provides for in-home suppor-tive services for former, current and potential recipients, provides an additional grant to a severely impaired recipient or a severely impaired and indigent aged, blind or disabled individual, to purchase such service, if he so elects, and requires the state to fund in-home supportive

services." Plaintiffs' contention that the Legislature did not intend to provide for the disabled who have adequate food preparation facilities by in-home meal preparation services to the exclusion of a meals-out allowance does not find support in the expressed legislative intent. The Legislative Council's Digest indicates to the contrary as do the questioned statutory provisions. ■ Every legislative enactment must be construed with reference to the whole system of law of which it is a part so that all parts may be harmonized and have effect. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640 [335 P.2d 672]; *Stafford* v. *L. A. etc. Retirement Board* (1954) 42 Cal.2d 795 [270 P.2d 12].) In order to achieve this harmonization, we may consider the stated intent and purpose of the legislative body at the time of the adoption as well as viewing the legislative act as a whole together with the historical background and the consequences of the interpretation of the act. (*Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258 [175 P.2d 1]; *Estate of Ryan* (1943) 21 Cal.2d 498 [133 P.2d 626].)

■ Reading subdivision (e) of section 12200 in conjunction with sections 12300 and 12301,[2] it is clear the Legislature intended to create a plan of in-home services for the totally disabled, to be supplemented by a meals-out allowance where adequate storage and cooking facilities are not available to utilize the provided in-home help. The Legislature, in its wisdom, determined that the totally disabled are better served by in-home meal preparation than by requiring them to take their meals outside the home.

Plaintiffs next attack the adoption of the regulation on two additional bases: (1) the Legislature did not intend to provide in-home services for those who have food preparation facilities to the exclusion of a meals-out allowance; and (2) the cost of the services are extremely disparate. In support of their argument, they refer to the statutory language that the meals-out benefits are "in addition to any other amount he [they are] is entitled to under this chapter." This language is so general that it cannot lend weight to the plaintiffs' argument. The fact that the Legislature intended to allow a person who has no cooking facilities to have in-home housecleaning services plus a meals-out allowance does not indicate an

---

[2]Section 12300 of the Welfare and Institutions Code provides in pertinent part: "The purpose of this article is to provide a range of supportive services for those current, former or potential recipients of public assistance who can remain in their own homes or an abode of their own choosing when such services are provided."

Section 12301 provides: "The intent of the Legislature in enacting this article is to provide supplemental or additional services to the social and rehabilative services of Article 6 (commencing with Section 12250) of this chapter."

intent to grant a meals-out allowance to one who has cooking facilities as an alternative to in-home meal preparation services. In support of their cost argument, plaintiffs argue hired homemakers cost $2 an hour while meals-out allowance is $25 per month per person. Plaintiffs reason that the Legislature could not have intended to pay such a higher amount when the needs may be filled on a more financially reasonable basis. They present this argument in view of an asserted financial crisis of the SSP Program. At best, this financial argument serves to characterize the legislative decision only as potentially unwise, not unclear. It is not for this court to judge or to rule upon the wisdom of the legislative act.

The phrase "living arrangement" as used in subdivision (e) of section 12200 is reasonably susceptible either to an interpretation referring to the total living environment or to the recipient's domestic physical facilities. In view of the homemaker services provided by statute (fn. 2, *ante,* p. 511), it was not unreasonable for the department to interpret the phrase to refer to the physical living facilities of the recipient or applicant. Although there may be more than one reasonable interpretation of the statute and the regulation, the defendants, by selecting one, did not act arbitrarily. ■ Where a statute or regulation is susceptible of two constructions, the one that leads to the more reasonable result when construing the whole system of the law will be followed. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640; *Metropolitan Water Dist.* v. *Adams, supra,* 32 Cal.2d 620.)

Plaintiffs suggest that because meals-out allowances had been provided for in previous legislation, the Legislature must have intended to continue that program in the superseding provisions of subdivision (e) of section 12200. We do not agree. The contention logically applied is most unsound. Such reasoning would shackle the legislative ability to enact future changes of programs where change is required by different social values and needs.

Plaintiffs have cited *Cooper* v. *Swoap, supra,* 11 Cal.3d 856 and *Waits* v. *Swoap* (1974) 11 Cal.3d 887 [115 Cal.Rptr. 21, 524 P.2d 117] as authority for the argument that the director, defendant here, abused his discretion and acted capriciously in promulgating EAS 46-326. The cited authorities do not support the contention. We distinguish each of the cases *(Cooper* v. *Swoap, supra,* and *Waits* v. *Swoap, supra).* In each, the legislative intent was patently clear and the departmental regulation adopted by the defendant director (Carleson, predecessor to Director Swoap) obviously derogated that intent. Such is not the case here.

■ For the reasons stated, we conclude the defendants acted reasonably and were not, by their action, arbitrary or capricious in adopting EAS 46-326, implementing the previous subdivision (e) of section 12200 of the Welfare and Institutions Code.

II

■ Plaintiffs argue that the denial of the meals-out allowance to those disabled persons with cooking and food storage facilities in their residence is violative of the equal protection provision of the California and federal Constitutions.[3] Such argument compels recognition of the proposition that persons similarly situated with respect to legitimate legislative purposes must receive like treatment. (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) Plaintiffs argue that regulation EAS 46-326 discriminates between the disabled who are unable to prepare meals at home and those who have physical facilities where meals can be prepared at home, by denying the latter the meals-out allowance and providing instead in-home services for food preparation. The argument lacks merit. In harmonizing effect and application of the various statutory provisions, we find no violation of the constitutional proscription against denial of equal protection of the law. By classifying disabled persons differently, according to their physical environmental facilities and providing for different methods of meeting their food needs, the Legislature did not create an arbitrary, irrational, or discriminatory legislative scheme. Such classification is based on practical and obviously physical environmental differences relating only to living facilities. The methods prescribed to meet those needs are deemed to be most appropriate to provide for the needs of the disabled person. A distinction was recognized, not a discrimination, for those who have physical environmental living facilities sufficient to provide for adequate food storage and preparation, in-home help services are provided for meal preparation; for those who do not have such facilities at their place of residence, meals-out financial allowances are provided in addition to other financial aids, since in-home help services would be useless. Such distinction and determination on the part of the Legislature is reasonable and not violative of any constitutional proscriptions.

---

[3]Section 13 and section 21 of article I of the California Constitution, and Fourteenth Amendment of the United States Constitution.

### III

Plaintiffs finally contend that the departmental regulation EAS 46-326 created an irrebutable and conclusive presumption that plaintiffs, as the disabled persons and all persons similarly afflicted, having adequate cooking facilities, are able to prepare their meals at home, thus denying them due process of law.[4] That premise is erroneous. The regulation implementing subdivision (e) of section 12200 of the Welfare and Institutions Code does not create a presumption but provides a benefit, eligibility for which is based upon environmental consideration. The regulation totally restricts itself to such consideration. Plaintiffs cite *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]; *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586]; and *People* v. *Gilbert* (1969) 1 Cal.3d 475, 484 [82 Cal.Rptr. 724, 462 P.2d 580], to support their contention that presumptions, such as they allege exist in the questioned regulation, are not given constitutional sanction since they deprive the party concerned of a due process hearing as to the facts at issue. Their contention and citations are not persuasive or helpful. The due process argument must fail. The court in *Thompson* v. *Washington* (1973) 497 F.2d 626, 634 [162 App.D.C. 39], stated, "Under the current Supreme Court doctrine, the existence and extent of due process procedural requirements turn upon consideration of three factors, which may, but need not, be interrelated: (1) the nature of the forum through which the Government acts; (2) the source of the 'interest' of the citizen upon which Government action impinges; (3) the extent, in fact, of the deprivation which the Government action occasions."

Plaintiffs allege an interest to have been created by statute (§ 12200, subd. (e)) as the basis for their claim to a violation of their due process rights. We examine then the statute and the regulation to resolve the claim of plaintiffs either as a direct or implied claim that a hearing is constitutionally required on the question of "living arrangement." Plaintiffs assert the mandate of the due process clause is triggered by the deprivation of some interest created by the law. We acknowledge that welfare benefits are a matter of statutory entitlement for persons qualified to receive them; and although the right-privilege distinction may have limited utility, there must be an interest to which due process protection will attach. We fail to find any interest the statute has created in plaintiffs upon which they could assert their claim of violation of due process procedural rights.

---

[4]Section 13 of article I of the California Constitution, and the Fourteenth Amendment of the United States Constitution.

We have determined that the regulation has ascribed to it an eligibility requirement based upon environmental consideration. We have rejected the contention of plaintiffs that the regulation creates an allowance or interest for persons who are physically incapable of preparing their meals. By this determination and our analysis of the regulation, it is clear there is no interest in which plaintiffs may assert a violation of their procedural due process rights. Subdivision (e) of section 12200 of the Welfare and Institutions Code creates a right only for a class of persons who are here disabled without meal preparation facilities. Plaintiffs do not belong to this class.

Lastly, we finally examine the extent of deprivation and the alternatives available to the deprived party. (*Thompson* v. *Washington, supra,* 497 F.2d 626.) The alternative here is clear. The meals-out provision for the disabled without the physical facilities with which to prepare meals, and in-home supportive services for meal preparation for the disabled who do have physical facilities for adequate food storage and preparation, satisfy the alternative requirements.

It is clear that the regulation and statutory provisions do not presume that those with the physical facilities for food preparation are physically capable of using them; the ability or inability of the disabled person to use the facilities is totally irrelevant to the program of meals-out allowances. The statutory scheme provides for the needs of all disabled persons using a physical environment test.

Finally, we note that the day has past when the courts will nullify reasonable legislative choices in regulatory and social welfare legislation as violations of the due. process and equal protection proscriptions. (*Dandridge* v. *Williams* (1970) 397 U.S. 471 [25 L.Ed.2d 491, 90 S.Ct. 1153]; *Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461].)

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.