[Civ. No. 15931. Third Dist. Dec. 7, 1976.]

GEORGE P. REECE, as Acting Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS
BOARD, Respondent;
VIRGINIA SCHEFFEL, Real Party in Interest.

676

COUNSEL

Evelle J. Younger, Attorney General, and William J. Power, Deputy Attorney General, for Petitioner.

Floyd R. Mitzner for Respondent.

Patricia K. Norris for Real Party in Interest.

OPINION

PARAS, J.—This is an original petition for a writ of review filed under Business and Professions Code sections 23090 and 23090.5. The Acting Director of the Department of Alcoholic Beverage Control (hereinafter "ABC") seeks reversal of a decision of the ABC Appeals Board which held a departmental rule (Cal. Admin. Code, tit. 4, § 58), unconstitutional under California and United States equal protection standards. The rule in question states that the spouse of a person who is disqualified under section 62[1] from holding a liquor license is similarly so disqualified.

---

[1]Section 62 of title 4 of the California Administrative Code provides in pertinent part: "No license authorized by the Alcoholic Beverage Control Act shall be held by, or issued or transferred to, any person holding office in, or employed by, any agency of the State of California or any of its political subdivisions when the duties of such person have to do with the enforcement of the Alcoholic Beverage Control Act or any other penal

Virginia Scheffel is the wife of Arch Scheffel, a 21-year veteran of, and active as the Commander of the Detective Division in the San Joaquin County Sheriff's Department. In November 1974, she leased a grocery store and cafe in a rural area of San Joaquin County. The lessors had operated a similar business on the premises for many years prior to leasing it to Virginia, and had been holders of an off-sale beer and wine license. Virginia submitted an application for such a license to the ABC, accompanied by a written and signed post-nuptial agreement stating that the business was entirely her separate property over which Arch would have no management or control. The application was denied on the ground of Arch's employment. She nevertheless began to operate the business, but estimated at the hearing that her inability to sell wine and beer had cut the gross sales by 50 percent or more.

The hearing examiner's proposed opinion upheld the denial, finding sections 58 and 62 not in conflict with the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and the due process clause of article I, section 13 of the California Constitution.

The appeals board took the position that the "strict scrutiny standard of review" was applicable "because section 58 limits the fundamental right of one class of persons to pursue a lawful occupation," citing *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]. It then stated, "We do not consider the department as having established a compelling interest for the application of section 58 as to the factual situation before us; i.e., where an otherwise qualified spouse holds the proposed premises as her separate property, and the applicant's spouse, who is disqualified from holding a license by virtue of section 62, will not be employed by nor assist the applicant in the operation of the proposed premises." The board further noted in its opinion that the applicant confirmed at oral argument that her husband

provisions of law of this State prohibiting or regulating the sale, use, possession or manufacture of alcoholic beverages. This rule is deemed to apply specifically, but without limiting its effect, to any persons employed in the Department of Justice of the State of California, in any district attorney's office, in any sheriff's office, in any local police department, or in the Department of Alcoholic Beverage Control. This rule shall apply to any person mentioned herein who has any ownership interest, directly or indirectly, in any business to be operated or conducted under an alcoholic beverage license and for a period of 90 days after such person retires from or leaves the employment of such agency, provided that with respect to local officials such 90-day limitation shall apply only to the county wherein such person resided when he was so employed."

"will not be employed at nor assist [her] in operating the proposed premises."

We reverse the board's decision because the strict scrutiny test does not apply, and because the rational relationship test is satisfied by sections 58 and 62.

I

The equal protection standards under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution are substantially the same. (*Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at p. 15, fn. 13.) California follows the two-level test employed by the United States Supreme Court in reviewing legislative classifications under the equal protection clause. As stated in *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487]: "In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. [Citations.] [¶] On the other hand, in cases involving 'suspect classifications' or touching on 'fundamental interests,' [fn. omitted], the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations.] Under the strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." (Italics in original.)

The California Supreme Court in *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at p. 17, held that the strict scrutiny standard applied to a statute prohibiting the employment of female bartenders, "first, because the statute limits the fundamental right of one class of persons to pursue a lawful profession, and, second, because classifications based upon sex should be treated as suspect."

Although the board in its decision relied upon only the first of the *Sail'er Inn* rationales, i.e., the fundamental right to pursue a lawful profession, it argues in this court that another reason for applying the strict scrutiny standard is that sections 58 and 62 *in fact* discriminate on the basis of sex. It asserts that: "[w]hile section 58 prohibits the 'spouse'

of a person who is not qualified to hold an alcoholic, beverage license (because he is a law enforcement officer) from also holding an alcoholic beverage license, we need not blind ourselves to the fact that most spouses of law enforcement officers are females."

In making this assertion, the board overlooks the fact that rule 62 is not limited to law enforcement officers but applies explicitly to *all* employees (including clerks, secretaries, department heads, etc.) of the California Department of Justice, local district attorneys' offices, police and sheriffs' offices, and the ABC. No statistics have been furnished to us as to the proportions of male and female employees in all these agencies, but we cannot blind ourselves to the fact that many, if not most, are female. Axiomatically therefore, many if not most of the spouses falling under the disability of section 58 are *male.*

In evaluating an equal protection attack against a regulatory statute or regulation, it is improper to isolate its effect upon a specific segment of the affected class, and to sustain it if found deficient as to that segment alone. The overall effect upon the entire class must be viewed. The board here considered the effect of sections 58 and 62 upon spouses of law enforcement officers only, ignoring the multitude of spouses of so many other employees of sheriff, police, district attorney and ABC offices.

When these too are considered, it is evident that sections 58 and 62 do not discriminate on the basis of sex.

## II

The board concentrates most of its attention on the first rationale of *Sail'er Inn,* that there is a fundamental right to pursue a lawful profession. But we note that the applicant here is not seeking to engage in "one of the common occupations of the community;" rather she is applying for a license to deal in alcoholic beverages. The Supreme Court in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 18 [112 Cal.Rptr. 786, 520 P.2d 10], significantly circumscribed the broad language of *Sail'er Inn,* stating: "Plaintiffs rely heavily on the decision of this court in *Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d 1. It is true that in that case we employed rather broad language in describing why the

'strict scrutiny' standard was applicable—including language which might be fairly read to indicate that the statute in question touched upon a 'fundamental interest' within the meaning of the above-discussed cases insofar as it limited the right of a class of persons to pursue a lawful profession. We do not believe, however, that that language compels the application of the more stringent [*sic*] standard of review to this case. Three independent reasons support our belief. First, the fundamental thrust of *Sail'er Inn* is against discrimination on the basis of sex, a classification which is clearly 'suspect' and therefore subject on that basis to review under the 'strict scrutiny' test. Second, to the extent that *Sail'er Inn* may be interpreted to find a cognizable 'fundamental interest' in the right to pursue employment, *it is clearly limited in scope to. 'the common occupations of the community' and should not be applied to professions whose technical complexity and intimate relationship to the public interest and welfare counsel greater deference to the legislative judgment.* Third, and perhaps most significant from the point of view of legal precedent, *Sail'er Inn* was decided prior to the case of *San Antonio School District* v. *Rodriguez, supra,* 411 U.S. 1 [36 L.Ed.2d 16, 93 S.Ct. 1278]; the latter case, as we have indicated above, establishes that 'fundamental interests' for the purpose of equal protection review are limited to rights which are 'explicitly or implicitly guaranteed by the Constitution.' (411 U.S. at pp. 33-34 [36 L.Ed.2d at pp. 43-44].) *No such interest or right is involved in the instant case."* (Italics added.)

■ The liquor industry is one whose regulation has long been recognized as intimately related to the public interest, counseling deference to legislative judgment. And there is undeniably no right, either explicitly or implicitly guaranteed by the Constitution, to engage in the liquor business. As stated in *California Beer Wholesalers Assn., Inc.* v. *Alcoholic Bev. etc. Appeals Bd.* (1971) 5 Cal.3d 402, 409, footnote 12 [96 Cal.Rptr. 297, 487 P.2d 745], "We have consistently recognized . . . that the state may exercise particularly wide powers with respect to the manufacture and distribution of alcoholic beverages and may provide, prohibit, or restrict sales and distribution, as it may deem proper. (See *Allied Properties* v. *Dept. of Alcoholic Beverage Control, supra,* 53 Cal.2d 141, 147 [346 P.2d 737]. . . .)"

Accordingly, we conclude that no fundamental interest is abridged by sections 58 and 62, and thus the strict scrutiny test does not apply.

## III

We finally consider these sections in the light of a rational relationship to the legislative (in this case administrative) purpose. ■ The evident objective of the department in promulgating sections 58 and 62 is to prevent a conflict of interest between liquor licensees and those involved in the enforcement of liquor laws.

There is no question that such conflict of interest rules are valid as applied to the persons specified in section 62, all of whom are responsible for or involved in the enforcement of liquor law violations. In a closely analogous case, *Keeley* v. *State Personnel Board* (1975) 53 Cal.App.3d 88, 97 [125 Cal.Rptr. 398], we stated that rule 62 was justified by the following rationale: "The ABC is concerned that liquor laws be properly enforced. Since peace officers enforce these laws, their employment in the liquor trade might lead to nonenforcement or lenient enforcement of violations on their premises by fellow officers, or place them in the unpleasant and conflicting position of arresting a customer of their own business." Similar conflict-of-interest legislation has recently been upheld against constitutional challenge in *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662 [114 Cal.Rptr. 345, 522 P.2d 1345].

The more delicate question is whether such conflict of interest rules can be applied to spouses under section 58.

The facts present a sympathetic case for Mrs. Scheffel. Her husband is the commander of detectives, who is presumably not assigned to patrol duties, and thus unlikely to be initially involved in routine calls regarding violations on the business premises. Moreover, the business is her separate property, and there is an affirmative representation that Mr. Scheffel will not be employed and will not assist her on the business premises. The license sought is an off-sale beer and wine license, and presumably associated with lesser enforcement problems than other types of liquor licenses.

Nevertheless, the record unequivocally discloses the justification for, and hence the rational relationship of, the spousal disability. The administrative law judge suggested to Mr. Scheffel that he might be "picking his wife up from work and the clerk sells a person of questionable age a six-pack and right there you are in trouble." The response to this hypothetical suggestion accents the justification for the

prohibition: ". . . I believe it is the integrity of the officer that's involved here . . . ." His further response (at the suggestion of counsel) that he would face the same conflict if he noticed a violation of a health code section relating to the storage of meat in the store, adds nothing to the argument. It is irrelevant. The ABC has no control over nonalcoholic business licensing or health department regulations. Similar rules by a health department relating to its employees may or may not be rationally related to ensuring fair enforcement of health laws; but that question does not concern us here. The ABC cannot be faulted for failing to regulate in an area beyond its jurisdiction, nor may another agency's failure to enact rules affect the validity of the ABC's rules.

It would be naive to assume that a husband has no concern about the property of his wife (or vice-versa) simply because it is her separate property. Such lack of concern would be both unnatural and undesirable. As was pointed out in *Nielsen* v. *Richards* (1925) 75 Cal.App. 680 [243 P. 697, 701], the wife's separate property adds a sum of money for her support and indirectly to the support of her spouse. That case found a conflict of interest by a husband who was school superintendent, in hiring his wife to teach in one of the schools in the district, despite a prior agreement (similar to this case) that her wages would be her separate property.

Moreover, addressing a similar issue (disclosure of spouse's economic interests) in *County of Nevada* v. *MacMillen, supra,* 11 Cal.3d at pages 675-676, the Supreme Court stated the following: ". . . it is apparent that the act's 'indirect investment' provisions are reasonably necessary to promote the act's underlying purposes, for otherwise an official could defeat the disclosure provisions by the simple means of transferring record title to his spouse or dependent children. Finally, even as to property in which the official has no beneficial interest whatever (such as his spouse's separate property), the act serves the legitimate purpose of assuring that the official disclose the fact that his spouse or dependent children own property which might be materially affected by his official actions. Common sense tells us that although an official may have no economic interest in such property, nevertheless he may react favorably, or without total objectivity, to a proposal which could materially enhance the value of that property. Disclosure might substantially inhibit any such sympathetic reaction, thereby promoting the act's goals of honesty and impartiality in government. [Fn. omitted.] We conclude that the 'indirect investment' provision of section 3700 is valid."

Furthermore, the liquor trade has a unique history of enforcement problems which make it peculiarly amenable to this type of conflict-of-interest regulation. Everything considered, we conclude and hold that the regulation disabling spouses of persons involved in law enforcement from holding alcoholic beverage licenses is rationally related to a justifiable governmental interest in assuring vigilant and fair enforcement of liquor laws. Section 58 is therefore constitutional.

The decision of the appeals board is annulled and the case is remanded to the board with instructions to affirm the department's denial of the application.

Puglia, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied January 3, 1977, and respondent's petition for a hearing by the Supreme Court was denied February 3, 1977. Tobriner, Acting C. J., was of the opinion that the petition should be granted.