Opinion
 

 PARAS, J.
 

 Rosie Lee Camp, Maryann Mueller, and Stella Cheney brought this action for declaratory and injunctive relief individually and on behalf of their children, challenging regulations promulgated in October 1971 by the Department of Social Welfare (hereinafter Department).
 
 [1]
 
 Plaintiffs also sue as representatives of a class consisting of all recipients of aid to families with dependent children (AFDC) affected by the challenged regulations, under which a portion of a nonadoptive
 
 *736
 
 stepfather’s earnings is considered available for the support of his wife’s children from a prior relationship and is thereby deducted from the AFDC grants that would otherwise be paid for these children. Plaintiffs filed a supplemental complaint seeking similar relief after the Department promulgated additional regulations in June 1972 applicable to AFDC households with nonadoptive stepfathers. After trial in February 1974, the enforcement of both sets of regulations was permanently enjoined.
 

 The Department appeals only from the trial court’s invalidation of the October 1971 regulations. Plaintiffs cross-appeal from the trial court’s denial of attorney’s fees.
 

 As part of the Welfare Reform Act of 1971 (Stats. 1971, ch. 578, p. 1137), section 5127.5
 
 [2]
 
 of the Civil Code was enacted to provide a wife with the legally enforceable right to manage and control her share of the community property, including the husband’s earnings, to the extent necessaiy to fulfill her legal obligation to support her children. Responding to the new statute, the Department in October 1971 promulgated the two regulations which are the subject of this lawsuit.
 
 [3]
 
 The first of these regulations, State Department of Social Welfare, Manual of Policies and Procedures: Eligibility and Assistance Standards, section 43-113, provides in subdivision .6 thereof: “A stepfather is not legally responsible for the support of his wife’s children by another man, unless he has adopted them. However, his wife’s interest in the community property, including the earnings of her husband . . . shall be considered available for the support of his stepchildren).” The second regulation, Eligibility and Assistance Standards, section 44-133.5, sets forth the method for comput
 
 *737
 
 ing the wife’s community interest in her husband’s income. That amount is considered net income available to the dependent children of a household for purposes of determining the amount of assistance to be granted.
 

 Plaintiffs immediately challenged these regulations by filing the present class action lawsuit. In October 1971, the trial court issued a preliminary injunction restraining their enforcement. In February 1972, the preliminary injunction was modified to provide that in computing assistance under the program, the Department could only consider income that was actually available to an AFDC household for current use on a regular basis. The preliminary injunction as modified included detailed instructions to guide the Department in determining whether, in a particular case, a stepfather’s earnings were actually made available for the support of nonadopted children living in his household.
 
 [4]
 

 The trial court determined that the action was properly maintained as a class action and concluded that the October 1971 regulations denied due process of law and violated federal regulations governing the AFDC program.
 

 Approximately 24,000 AFDC families, including those of the named plaintiffs, were affected by the regulations. The Department’s objective in adopting them was to account for the earnings of a nonadoptive stepfather in computing entitlement to, and the amount of, AFDC assistance to the wife’s dependent children living in the household. Accordingly, Eligibility and Assistance Standards, section 43-113.6, attributes a portion of the wife’s interest in the community property, including her husband’s earnings, as available for the support of her children. Under Eligibility and Assistance Standards, section 44-133.521 (see also Civ. Code, § 5127.5 (fn. 2,
 
 ante,
 
 p. 736)), the wife’s community interest in her husband’s income is computed by deducting from his total earnings the sum of the actual amount contributed by him to the support of
 
 his
 
 children by a woman other than his current wife plus
 
 *738
 
 $300. The remainder
 
 or
 
 one-half of the husband’s gross earnings, whichever is less, is considered net income available to the “Family Budget Unit,” defined by Department regulations as the needy persons within a household eligible for AFDC. Evidence was received to show the extent to which the regulations would reduce the amount of assistance received by selected family budget units, including that of plaintiff Camp, notwithstanding that little or none of the stepfather’s earnings were actually made available for support of the wife’s dependent children.
 

 I.
 

 The Department contends that two valid “income transfer presumptions” inhere in the October 1971 regulations, which justify the attribution of a wife’s community property interest in her husband’s earnings to the support of her children from a prior relationship in computing assistance under the AFDC program. First, there is a husband-to-wife income transfer presumption which the Department asserts is justified by “common-sense understandings of how normal families get along,” by the husband’s statutory duty to support his wife (Civ. Code, § 5100), and by the enforceable legal obligation established on the mother’s behalf by Civil Code section 5127.5. Second, there is a mother-to-child income transfer presumption under which a mother is presumed to apply her income, including that portion made available to her by Civil Code section 5127.5, to the support of her children from a prior relationship. This second presumption rests upon the statutory obligation of a mother to support her natural children. (Civ. Code, §§ 196, 206.)
 
 [5]
 
 Thus, the Department urges that Civil Code section 5127.5, when considered in conjunction with the husband’s duty to support his wife and the wife’s duty to support her children, affords a basis compatible with federal law for imputing the wife’s community interest in her husband’s earnings to the support of her children under the AFDC program.
 

 The trial court, relying primarily upon
 
 Vlandis
 
 v.
 
 Kline
 
 (1973) 412 U.S. 441 [37 L.Ed.2d 63, 93 S.Ct. 2230] and
 
 U S. Dept, of Agriculture
 
 v.
 
 Murry
 
 (1973) 413 U.S. 508 [37 L.Ed.2d 767, 93 S.Ct. 2832], determined that the regulations denied AFDC recipients due process of law by conclusively presuming that a nonadoptive stepfather would make the wife’s commu
 
 *739
 
 nity property interest in his earnings available to her for the support of her children.
 

 In
 
 Vlandis,
 
 the court held invalid a Connecticut statute defining “residents” for purposes of fixing tuition to be paid by students in the state university. The court reasoned that Connecticut, which purported to be concerned with residency, could not deny to one seeking to meet its residency test the opportunity to show facts clearly bearing on that issue.
 
 (Vlandis
 
 v.
 
 Kline, supra,
 
 412 U.S. at p. 452 [37 L.Ed.2d at p. 71].) In
 
 Murry,
 
 the court, with four justices dissenting, held that a provision of the Food Stamp Act of 1964 violated due process by denying food stamp eligibility to households containing persons 18 years or older who had been claimed as dependents for income tax purposes by taxpayers who were themselves ineligible for food stamp relief.
 
 (U. S. Dept, of Agriculture
 
 v.
 
 Murry, supra,
 
 413 U.S. at pp. 513-514 [37 L.Ed.2d at pp. 772-773].)
 

 More apposite to the present appeal is the later United States Supreme Court decision in
 
 Weinberger
 
 v.
 
 Salfi
 
 (1975) 422 U.S. 749 [45 L.Ed.2d 522, 95 S.Ct. 2457]. There the court rejected a due process challenge to the duration-of-relationship requirements of the Social Security Act, which define “widow” and “child” for purposes of social security insurance benefits to exclude surviving wives and stepchildren who had their respective relationships to a deceased wage earner for less than nine months prior to his death. The court stated that its holdings in cases such as
 
 Vlandis
 
 and
 
 Murry
 
 were not controlling
 
 (Weinberger
 
 v.
 
 Salfi, supra,
 
 422 U.S. at pp. 771-772 [45 L.Ed.2d at pp. 542-543]), recognizing that in cases involving the withholding of noncontractual benefits under a social welfare program, “ ‘the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.’ ”
 
 (Id.,
 
 at p. 768 [45 L.Ed.2d at p. 540], citing
 
 Flemming
 
 v.
 
 Nestor
 
 (1960) 363 U.S. 603, 611 [4 L.Ed.2d 1435, 1445, 80 S.Ct. 1367].) The court, noting the similarity in equal protection and due process analysis in the area of social welfare legislation, restated its earlier holding in
 
 Dandridge
 
 v.
 
 Williams
 
 (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153]: “‘In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some ‘reasonable basis,’ it does not offend the Constitution simply because the classification “is not made with mathematical nicety or because in practice it results in some inequality.” [Citation.]’ ”
 
 (Weinberger
 
 v.
 
 Salfi, supra,
 
 422 U.S. at p. 769 [45 L.Ed.2d at p. 541].)
 

 
 *740
 
 Plaintiffs, relying on decisions such as
 
 Vlandis
 
 and
 
 Murry,
 
 contend that the Department may not irrebutably presume that a stepfather will make his earnings and other resources available for the support of nonadopted children living in his household. They stress that the Department’s own records indicate that in many cases in which the October 1971 regulations would have attributed a stepfather’s earnings to the support of nonadopted stepchildren, no earnings were actually available for the children’s support; in other cases, the income actually provided for the stepchildren’s support was substantially less than that presumed available by the regulations.
 

 Plaintiffs’ attack on the conclusive aspect of the income availability presumption in the October 1971 regulations is rebuffed by the
 
 Salfi
 
 decision. Therein the court, acknowledging that a social welfare provision may prove in a particular case to be under-inclusive or over-inclusive in light of its presumed purpose, held that such a provision is nevertheless valid if it is reasonably related to legitimate interests in administrative economy and certainty of coverage for those who meet its terms. The court reasoned that the crucial question is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the legislative concern reflected in the statute. Rather, the determinative question is whether the legislative or administrative body responsible for the provisions, having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation would protect against its occurrence and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.
 
 (Weinberger
 
 v.
 
 Salfi, supra,
 
 422 U.S. at pp. 776-777 [45 L.Ed.2d at pp. 545-546].)
 

 Utilizing the constitutional standard of review reaffirmed in
 
 Salfi,
 
 we conclude that neither the imprecision of the challenged regulations inaccurately reflecting in all cases the amount of stepfather earnings actually provided for the support of nonadopted children, nor the absence of the opportunity for individual eligibility determinations invalidates the income transfer presumption on due process grounds.
 
 (Id.,
 
 at pp. 781-785 [45 L.Ed.2d at pp. 548-550].) “There is thus no basis for our requiring individualized determinations when [the Legislature] can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of [legislative] concern which they might be expected to produce.”
 
 *741
 
 (422 U.S. at p. 785 [45 L.Ed.2d at p. 550]; see also
 
 Russell
 
 v.
 
 Carleson
 
 (1973) 36 Cal.App.3d 334, 342, 345 [111 Cal.Rptr. 497].) The Legislature could validly determine that limited AFDC resources would not be well spent in making individual assessments of stepfather income availability and could instead choose “to rely on rules which sweep more broadly than the evils with which they seek to deal.”
 
 (Weinberger
 
 v.
 
 Salfi, supra,
 
 422 U.S. at p. 784 [45 L.Ed.2d at p. 550].)
 
 [6]
 

 II.
 

 The trial court also concluded that the October 1971 regulations conflicted with federal regulatory provisions which govern state administration of the AFDC program. It relied principally upon 45 Code of Federal Regulations, section 233.90(a), which provides in relevant part: “In establishing financial eligibility and the amount of the assistance payment, only such net income as is
 
 actually
 
 available for current use on a regular basis will be considered, and the income only of [a natural, adoptive, or legally obligated parent] will be considered available for the children in the household in the absence of proof of actual contributions.” (Italics added.)
 

 The Department argued in the lower court that the October 1971 regulations did not run astray of this federal provision because Civil Code section 5127.5 afforded a valid basis for attributing a wife’s community property interest in her husband’s earnings to the support of her nonadopted children from a prior marriage. The trial court disagreed, citing federal regulations (45 C.F.R. §§ 233.90(a), 233.20(a)(3)(ii)(D)) which it construed as barring consideration of any of the wife’s community interest as a resource to her nonadopted children absent proof that the husband actually made his earnings available to her for their support. A review of the origin of 45 Code of Federal Regulations, section 233.90(a), and the United States Supreme Court decisions which
 
 *742
 
 have interpreted and applied its provisions, will demonstrate the validity of the trial court’s conclusions.
 

 A. Regulatory History
 

 In
 
 King
 
 v.
 
 Smith
 
 (1968) 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128], the United States Supreme Court invalidated an Alabama “substitute father” regulation that denied AFDC benefits to children of a mother who cohabited with a single or married able-bodied man not her husband. It was irrelevant under the state regulation whether the man was legally obligated to support the children or whether he in fact contributed to their support. Alabama contended that its rule simply defined nonabsent “parent” under 42 U.S.C.A. § 606(a), which in relevant part defines a dependent child as one “who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, . . .” The court held that the term “parent” in the federal statute meant an individual who owed the child a
 
 state-imposed duty
 
 of support.
 
 (King
 
 v.
 
 Smith, supra,
 
 392 U.S. at p. 329 [20 L.Ed.2d at p. 1132].)
 

 Section 233.90(a) of 45 Code of Federal Regulations was promulgated by the Department of Health, Education, and Welfare (HEW) in response to the holding in
 
 King
 
 v.
 
 Smith, supra.
 

 [7]
 

 Its key provision provides that in determining a child’s financial eligibility and the amount of assistance payments, “the income only of the [legally obligated] parent . . . will be considered available ... in the absence of proof of actual contributions.” The new regulation was applied in
 
 Lewis
 
 v.
 
 Martin
 
 (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282], which dealt with the validity of a California statute (Welf. & Inst. Code, § 11351) that provided that in computing payments to needy children who lived with their mother and stepfather or “an adult male person assuming the role of spouse” (MARS), consideration should be given to the income of the stepfather or MARS. Section 11351 conclusively presumed that the needs of the children were reduced by the amount of income available from a nonadoptive stepfather whether or not it was in fact available for their needs and despite the fact that under California law a nonadoptive stepfather is not legally obligated to support his wife’s children from a prior marriage. (Civ. Code, § 209.) The statute was held invalid as in conflict with the Social Security Act, 45 Code of Federal Regulations, section 233.90(a), and the court’s previous holding in
 
 King
 
 v.
 
 Smith.
 
 
 *743
 

 (Lewis
 
 v.
 
 Martin, supra,
 
 397 U.S. at pp. 559-560 [25 L.Ed.2d at p. 567].) The Supreme Court reasoned that “In the absence of proof of actual contribution, California may not consider the child’s ‘resources’ to include either the income of a nonadopting stepfather who is not legally obligated to support the child as is a natural parent, or the income of a MARS—whatever the nature of his obligation to support.”
 
 (Ibid.)
 

 [8]
 

 The Welfare Reform Act of 1971 rekindled efforts by California welfare authorities to terminate abuses in the AFDC program whereby children living in the household of a nonadoptive stepfather who earned a substantial salary, owned considerable property, and acted in all respects as the head of the family unit, might still be entitled to full AFDC benefits. (See Zumbrum et al.,
 
 Welfare Reform: California Meets The Challenge
 
 (1973) 4 Pacific L.J. 739, 778-779.) An indirect approach to the problem was taken where the direct approach of Welfare and Institutions Code section 11351 had failed. Civil Code section 5127.5 was enacted to provide a wife with the legally enforceable right of management and control of her share of the community property to the extent necessary to fulfill her legal duty to support her natural children.
 
 [9]
 
 The Department promulgated the regulations in issue to implement this aspect of the welfare reform legislation. While acknowledging that a nonadoptive stepfather was not legally responsible for the support of his wife’s children from a prior relationship, Eligibility and Assistance Standards, section 43.113.6, provided that the wife’s interest in the community assets, including her husband’s earnings, was to be considered available for the stepchildren’s support.
 

 B. Incompatibility With Federal Standards.
 

 The AFDC program is based on a scheme of cooperative federalism.
 
 (King
 
 v.
 
 Smith, supra,
 
 392 U.S. at p. 316 [20 L.Ed.2d at p. 1125].) Although the state participation in the program is elective, once a state chooses to join its plan must comply with the mandatory requirements established by the Social Security Act (42 U.S.C.A. §§ 601-609).
 
 (King
 
 v.
 
 Smith, supra,
 
 392 U.S. at pp. 316-317 [20 L.Ed.2d at p. 1125]
 
 County of Alameda
 
 v.
 
 Carleson
 
 (1971) 5 Cal.3d 730, 739 [97 Cal.Rptr. 385, 488 P.2d 953].)
 

 
 *744
 
 It is undisputed that state authorities, in determining the need of a dependent child under the AFDC program, may take into consideration any resources actually available to the child from whatever source. (42 U.S.C.A. § 602(a)(7); 45 C.F.R. § 233.20(a)(3)(ii)(D); Welf. & Inst. Code, §§ 11008, 11450.) But the preceding review of the origin and application of 45 Code of Federal Regulations, section 233.90(a), makes it equally clear that welfare authorities may not attribute the income and resources of a stepfather to children in his household whom he has not adopted, absent proof that these resources are actually made available for their support.
 

 The United States Supreme Court reaffirmed its previous interpretation of 45 Code of Federal Regulations, section 233.90(a), in
 
 Van Lare
 
 v.
 
 Hurley
 
 (1975) 421 U.S. 338 [44 L.Ed.2d 208, 95 S.Ct. 1741], wherein it invalidated New York welfare regulations which reduced the shelter allowance provided AFDC recipients to the extent that there were nonpaying lodgers living in the recipient household. Relying on its construction of 45 Code of Federal Regulations, section 233.90(a), in
 
 Lewis
 
 v.
 
 Martin
 
 as barring the states from assuming that nonlegally responsible persons would apply their resources to aid the welfare child, the court held those New York regulations invalid insofar as they were based upon the assumption that a nonpaying lodger would contribute to the welfare household without inquiry into whether he in fact did so. “In short... the Social Security Act precludes treating a person who is not a natural or adoptive parent as a breadwinner ‘unless the bread is actually set on the table.’ ”
 
 (Van Lare
 
 v.
 
 Hurley, supra,
 
 421 U.S. at p. 346 [44 L.Ed.2d at p. 215], citing
 
 Lewis
 
 v.
 
 Martin, supra,
 
 397 U.S. at p. 559 [25 L.Ed.2d at p. 567].)
 

 The succession of Supreme Court decisions which have interpreted and applied 45 Code of Federal Regulations, section 233.90(a), leaves little doubt that California’s challenged regulations are incompatible with this federal provision barring states from assuming that nonlegally responsible persons will apply their resources to aid dependent children. The Department places great emphasis upon the nexus between the stepfather/husband and his wife which is created by Civil Code section 5127.5. The determinative relationship, however, is that between a stepfather and the nonadopted children who live in his household. Absent a legal obligation of support, the federal regulations explicitly negate the idea that in determining a child’s needs, a nonadoptive stepfather may be presumed to be providing support.
 
 (Lewis
 
 v.
 
 Martin, supra,
 
 397 U.S. at pp. 556-557 [25 L.Ed.2d at p. 565]; see also
 
 Carleson
 
 v.
 
 Remillard
 
 (1972)
 
 *745
 
 406 U.S. 598, 603 [32 L.Ed.2d 352, 356, 92 S.Ct. 1932];
 
 Waits
 
 v.
 
 Swoap
 
 (1974) 11 Cal.3d 887, 893-894 [115 Cal.Rptr. 21, 524 P.2d 117];
 
 Cooper
 
 v.
 
 Swoap
 
 (1974) 11 Cal.3d 856, 870 [115 Cal.Rptr. 1, 524 P.2d 97].) Thus “It is clear . . . that Congress expected ‘breadwinners’ who secured employment would support their children. This congressional expectation is most reasonably explained on the basis that the kind of breadwinner Congress had in mind was one who was
 
 legally obligated
 
 to support his children.” (Italics added;
 
 King
 
 v.
 
 Smith, supra,
 
 392 U.S. at p. 329 [20 L.Ed.2d at p. 1132]; see also
 
 Rosen
 
 v.
 
 Hursh
 
 (8th Cir. 1972) 464 F.2d 731, 734.)
 

 The Department contends that the income transfer presumptions embodied in Civil Code section 5127.5 and its implementing regulations are validated by 45 Code of Federal Regulations, section 233.20(a)(3)(vi)
 
 (b).
 
 This regulation provides in relevant part: “In family groups living together, income of the spouse is considered available for his spouse and income of a
 
 parent
 
 is considered available for children under 21.” (Italics added.) Since the term “parent,” as employed in federal statutes governing the AFDC program, includes only those individuals who owe a child a state-imposed legal obligation of support
 
 (King
 
 v.
 
 Smith, supra,
 
 392 U.S. at p. 329 [20 L.Ed.2d at p. 1132]), the Department’s reliance on this regulation is misplaced. It merely presumes that a parent makes his or her income available to
 
 natural
 
 or
 
 adopted
 
 children living in the household; the presumption does not extend to nonadopted children of the other spouse. Moreover, the Department ignores the fact that this federal provision was in effect at the time of the Supreme Court’s decision in
 
 Lewis
 
 v.
 
 Martin,
 
 wherein federal regulations governing the AFDC program were construed ás barring the assumption that individuals would provide support to children to whom they owed no legal obligation of support.
 

 The Department also seeks to uphold the validity of the October 1971 regulations on the basis of 45 Code of Federal Regulations, section 233.20(a)(3)(ii)(D), which was revised in 1975 to allow welfare authorities to consider resources available to AFDC applicants both when they are actually available for current use and when the applicant has “a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance; . . .”
 
 [10]
 
 This revised regulation merely implements a statutory directive (42 U.S.C.A. § 602(a)(7)) requiring that an eligible child’s need be assessed in light of income and
 
 *746
 
 resources available to him.
 
 (Lewis
 
 v.
 
 Martin, supra,
 
 397 U.S. at p. 555 [25 L.Ed.2d at p. 565].) The revision has no effect upon 45 Code of Federal Regulations, section 233.90(a), which still provides that the income only of parents who are legally obligated under state law to support their stepchildren will be considered available in determining need, absent proof of actual contributions. If federal authorities responsible for control of the AFDC program intended to encourage a wider use of income-transfer presumptions relating to stepfathers who lack a legal obligation of support, presumably they would revise the federal regulation most directly applicable to the stepfather situation, which is 45 Code of Federal Regulations, section 233.90(a).
 

 C. Repeal of Civil Code section 5127.5 By Implication.
 

 Since we uphold the trial court’s conclusion that the October 1971 regulations are incompatible with federal regulations governing the AFDC program, we deem it unnecessary to resolve plaintiffs’ further contention that Civil Code section 5127.5 has been impliedly repealed by the enactment of Civil Code section 199, which became operative in 1975.
 

 III.
 

 The trial court denied plaintiffs’ request for attorney’s fees, noting the absence of a statutory basis for such an award. Plaintiffs contend that the trial court possessed the inherent equitable power to award attorney’s fees and should have exercised its discretion in their favor.
 

 Absent a controlling statute or an agreement between the parties, attorney’s fees are generally not awarded to successful litigants in American courts. (Code Civ. Proc., § 1021;
 
 Mandel v. Hodges
 
 (1976) 54 Cal.App.3d 596, 619 [127 Cal.Rptr. 244, 90 A.L.R.3d 728]; see
 
 Fleischmann Corp.
 
 v.
 
 Maier Brewing Co.
 
 (1967) 386 U.S. 714, 717-718 [18 L.Ed.2d 475, 478-479, 87 S.Ct. 1404].) Plaintiffs advance four judicially evolved exceptions to the general rule barring such an award, the “oppressive litigant” theory (see
 
 D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 26-27 [112 Cal.Rptr. 786, 520, 520 P.2d 10]), the “private attorney general” concept
 
 (Serrano
 
 v.
 
 Priest
 
 (1977) 20 Cal.3d 25, 44-47 [141 Cal.Rptr. 315, 569 P.2d 1303]),
 
 [11]
 
 the “common fund” doctrine
 
 (D’Amico
 
 v.
 
 Board of Medical Examiners, supra,
 
 11 Cal.3d at p. 25), and the “substantial benefit” rule
 
 (ibid.).
 

 
 *747
 
 It is pointless to discuss any of these theories since after the filing of briefs herein Code of Civil Procedure section 1021.5
 
 [12]
 
 was enacted, furnishing statutory authority for attorney fees in a case such as this. In
 
 Woodland Hills Residents Assn.
 
 v.
 
 City Council of Los Angeles
 
 (1979) 23 Cal.3d 917, 948 [154 Cal.Rptr. 503, 593 P.2d 200], the statute was ruled retroactive as to cases pending on appeal on its effective date. This is such a case.
 

 The cross-appeal is sustained and the case remanded to the trial court for reconsideration of the attorney fee issue under Code of Civil Procedure section 1021.5. In all other respects the judgment is affirmed.
 

 Puglia, P. J., and Evans, J., concurred.
 

 [1]
 

 Effective February I, 1974, the Department of Social Welfare was renamed the Department of Benefit Payments (Stats. 1973, ch. 1212, § 358, p. 2850). The complaint, filed October 5, 1971, named Robert B. Carleson, then Director of the Department of Social Welfare, as defendant. Thereafter Carleson’s successor, David B. Swoap, was substituted as defendant in his stead, and the Department of Benefit Payments was added as a defendant. Although Swoap has since been replaced as director, his successor has not been substituted as defendant in his place. (See Code Civ. Proc., .§ 385, subd. (a); rule 48, Cal. Rules of Court.)
 

 [2]
 

 Section 5127.5 of the Civil Code provides: “Notwithstanding the provisions of Section 5125 or 5127 granting the husband the management and control of the community property, to the extent necessary to fulfill a duty of a wife to support her children, the wife is entitled to the management and control of her share of the community property. “The wife’s interest in the community property, including the earnings of her husband, is liable for the support of her children to whom the duty to support is owed, provided that for the purposes of this section, prior support liability of her husband plus three hundred dollars ($300) gross monthly income shall first be excluded in determining the wife’s interest in the community property earnings of her husband. “The wife may bring an action in the superior court to enforce such right provided that such action is not brought under influence of fraud or duress by any individual, corporation or governmental agency. “A natural father is not relieved of any legal obligation to support his children by the liability for their support imposed by this section and such contribution shall reduce the liability to which the interest of the wife in the community property is subject.”
 

 [3]
 

 Since the regulations were adopted as emergency measures, they expired naturally when the Department failed to readopt them following the trial court’s preliminary
 
 *737
 
 injunctions. To prevent mootness of the lawsuit, the parties stipulated in the trial court that the Department would readopt identical regulations unless permanently enjoined from doing so.
 

 [4]
 

 Regulations promulgated by the Department to implement the directives of the modified injunction are currently in force and are not directly involved in this appeal. The trial court’s modified injunction enables the Department to find that a stepfather’s earnings are available for the support of nonadopted children living in his household, if, for example, there is evidence that the earnings are placed in a bank account held jointly with his wife, or the earnings are used to provide certain necessities of the stepchildren, or they are subject to liability on a credit account available for the wife’s use.
 

 [5]
 

 Under federal regulations governing the AFDC program, the income of a legally obligated parent is presumed available to a needy child without need for proof of actual contribution. (45 C.F.R. § 233.90(a).)
 

 [6]
 

 The Department points out that under currently effective regulations designed to implement the trial court’s modified injunction, it is a relatively simple matter for a stepfather/husband and his wife to arrange their bank and credit accounts and other resources in such a manner as to preclude a finding by welfare officials that the stepfather’s earnings are being made available to his wife for her children’s support. Thus, it is not at all clear that individual determinations of stepfather income availability, in lieu of the presumption of income availability created by the enjoined regulations, would effectively filter out those households in which a stepfather’s resources were sufficient to support all members of the household without resort to AFDC payments. (See
 
 Weinberger
 
 v.
 
 Salfi, supra,
 
 422 U.S. at pp. 782-783 [45 L.Ed.2d at pp. 549-550].)
 

 [7]
 

 The regulation was originally designated as 45 Code of Federal Regulations, section 203.1.
 

 [8]
 

 Section 11351 was repealed in 1971 following the decision in
 
 Lewis
 
 v.
 
 Martin
 
 (1970) 397 U.S. 552 [25 L.Ed.2d 561, 90 S.Ct. 1282],
 

 [9]
 

 Section 5127.5 was enacted before the major 1973 revision of California’s community property laws, which conferred a coequal right of management and control of the entire marital estate upon the wife. The 1973 revision did not become effective until 1975. (Stats. 1973, ch. 987, p. 1905.)
 

 [10]
 

 Prior to its revision, this provision was-designated as 45 Code of Federal Regulations, section 233.20(a) (3) (ii) (C).
 

 [11]
 

 Serrano
 
 v.
 
 Priest (1977) 20
 
 Cal.3d 25, [141 Cal.Rptr. 315, 569 P.2d 1303], was decided after the briefs herein were filed.
 

 [12]
 

 Code of Civil Procedure section 1021.5, provides as follows: “Upon motion, a court may award attorney’s fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor.”