[Civ. No. 27270. Fourth Dist., Div. Two. Feb. 16, 1983.]

In re the Marriage of KAREN RUTH and DONALD VANE SHUPE.
KAREN RUTH SHUPE, Respondent, v.
DONALD VANE SHUPE, Appellant.

COUNSEL

Christopher J. Miller for Appellant.

Karen Ruth Shupe Chapman, in pro. per., for Respondent.

OPINION

MORRIS, P. J.—In this contest for an increase in child support payments husband asks us to consider whether a husband-wife contract, between wife and her present husband (Dr. Chapman), which provides that each would maintain as separate property their respective incomes during marriage, bars consideration of the present husband's income for the purpose of determining the parents' respective child support obligations; and whether the court erred in increasing his (the father's) child support obligations. Wife cross-appeals from the judgment below, claiming that the increase in support was insufficient and that she should have been awarded attorney's fees.

### FACTS

Husband and wife obtained a dissolution of their marriage in March 1973. Wife was awarded custody of their only child, Jason, and husband was ordered to pay $168 per month as child support. Wife entered into a premarital agreement with her present husband, Dr. Myron Chapman, in August 1976. This agreement provided that one-half of each spouse's income would be considered community funds, while the remaining half would be deemed their separate property. The community funds would be available for the support of the couple's dependent children from prior marriages.

Wife and Dr. Chapman then married, but separated in August 1978. In August 1979, they resumed their marital relationship and orally amended their

premarital agreement.[1] The new agreement provided that each spouse should keep his or her own income separate. Dr. Chapman would pay for his personal expenses and contribute to expenses for food and household bills. He would also pay wife rent on her condominium, in which they lived with Jason.

In February 1980, wife began negotiations with husband to increase the amount of child support he provided for Jason. Seven years had passed since the original order; Jason was now nine years old and was still receiving the mere $168 per month he had been awarded as a child of two.

After 15 months of fruitless effort at negotiation, wife filed an action ordering husband to show cause why the child support payments should not be increased. The evidence at trial revealed that both parties had remarried since the original order in 1973; and both were making more money than they had prior to their divorce. Husband had become a full-time associate professor at a state college and, in addition, had opened a private practice. The trial court approximated his monthly net income at $1,600. Wife had completed her master's degree and was a full-time teacher for the Claremont Unified School District. When the case was brought to trial she was on sabbatical leave, working toward a doctoral degree and receiving one-half her normal salary. The court estimated that she would net $1,369 per month upon resumption of her full-time job.

Husband sought to have entered into evidence Dr. Chapman's income records. Wife objected on grounds that the contract between herself and Dr. Chapman rendered his income irrelevant. Husband then challenged the validity of wife's contention under Civil Code section 5127.6. The trial court found that the spousal agreement took the Chapmans out of the statute. The court refused to admit evidence of Dr. Chapman's income and ordered defendant to pay $250 per month in child support.

DISCUSSION

I.

Section 5127.6 provides, in part, that "the community property interest of a natural or adoptive parent in the income of his or her spouse shall be considered unconditionally available for the care and support of any child who resides with the child's natural or adoptive parent who is married to such spouse."

Husband argues that the words *"unconditionally available"* mean that all funds which, absent a contract to the contrary, would be considered wife's community property must be considered available for the support of a depen-

---

[1]The agreement's validity has not been challenged on appeal.

dent child. Wife counters that, because the contract kept her income separate from Dr. Chapman's, the statute does not apply.

Because the statute is not clear on its face, we look to its legislative history as an aid in discovering the legislative purpose.

## II.

 Civil Code section 5127.6 was enacted as part of the Welfare Reform Act of 1979. The original Assembly bill contained 14 different sections relating to "Aid to Families with Dependent Children" (AFDC) and food stamp programs. By enacting section 5127.6 the Legislature intended to presume the presence of stepparent income when determining eligibility for AFDC benefits to a custodial parent who had remarried. (Sen. Com. on Health & Welfare. Staff Analysis of Assem. Bill No. 381.)

 For a state to remain eligible for federal AFDC monies, its regulations must comport with federal guidelines. (*King* v. *Smith* (1968) 392 U.S. 309, 316 [20 L.Ed.2d 1118, 1125, 88 S.Ct. 2128]; *Camp* v. *Swoap* (1979) 94 Cal. App.3d 733, 743 [156 Cal.Rptr. 600].) The controlling federal regulation confronting the drafters of section 5127.6 provided that for a state to presume stepparent income in determining AFDC benefits, it would be required to enact a statute imposing on all stepparents a duty to support their stepchildren, commensurate with the duty owed by a natural parent to his or her child. (45 C.F.R. § 233.90 (1981).)

 In an attempt to satisfy this federal requirement, the Legislature broadened the statute to apply to all custodial parents, regardless of their participation in the AFDC program. Although it recently has been held that section 5127.6 did not achieve its facilitating purpose in imposing a duty of support on all stepparents, (*Wood* v. *Woods* (1982) 133 Cal.App.3d 954 [184 Cal.Rptr. 471])[2] the presumption of stepparent income provision has remained unchallenged, until now.

---

[2]In *Wood* v. *Woods,* the court began its analysis of section 5127.6 by examining the context in which it was enacted. The court recounted the historical conflict between the California Legislature's attempt to presume available stepparent income for the subject child's support and the federal government's requirement that only income actually available be considered. In addition it noted that the Legislature had, once before, attempted to impose a duty of support on the stepparent when it enacted section 5127.5. The Third District Court of Appeal, in *Camp* v. *Swoap, supra,* 94 Cal.App.3d 733, had invalidated this first attempt by finding that section 5127.5 did not establish an adequate legal obligation between stepparents and their nonadopted stepchildren. The court in *Woods* specifically adopted the analytic framework set forth in *Swoap* and, following elementary principles of statutory interpretation, sought to determine whether such a legal obligation had been created by section 5127.6. After examining the language of the statute, its legislative history and other relevant criteria, the court concluded that section 5127.6 had not imposed a legal duty on stepparents to support their nonadoptive stepchildren.

Under this holding, section 5127.6 clearly would have been invalid for failure to comply with

In light of the section's history, it is clear that the Legislature inserted the presumption of availability of stepparent income for the support of non-adopted stepchildren in order to comply with federal regulations and thereby qualify for federal participation in funding the state's AFDC program.

It is equally apparent that, although the Legislature was primarily concerned with presuming the availability of stepparent income for the purpose of conserving AFDC revenues, it did not limit the statute's effect to families receiving AFDC benefits, because of the federal guidelines. The Legislature knew that such limitation would not comply with the federal requirements for imposing this presumption. It, therefore, used language which appears to be intended to make the statute applicable to all persons. However, because its primary concern was the availability of income for AFDC families, it referred to the income of the spouse of the custodial parent only, and thereby created the ambiguity.

Thus the statute is susceptible to the interpretation that it imposes a conclusive presumption that all custodial parents have a community property interest in their spouse's income for the purpose of supporting their resident children. Husband adopts this interpretation, and asserts that wife's contract cannot be used as evidence to rebut this presumption.

### III.

Wife challenges this interpretation of section 5127.6 under the equal protection clause of the Fourteenth Amendment to the United States Constitution. Wife asserts that the effect of such interpretation of section 5127.6 is to consider available for the child's support the community property interest of the custodial parent, while the community property interest of the noncustodial parent is immunized from like consideration under Civil Code section 199.

Section 199 does not prevent courts from looking to the community property interests of both parents in determining their ability to provide support as wife claims. (See *In re Marriage of Brown* (1979) 99 Cal.App.3d 702, 706-707 [160 Cal.Rptr. 524]; and Civ. Code, § 4807 which provides: "The community property, the quasi-community property and the separate property may be subjected to the support, maintenance, and education of the children in such proportions as the court deems just.") Therefore, wife fails in sustaining an equal protection violation on this ground.

---

the federal requirements in existence at the time of its enactment. However, as the *Woods* court noted, prior to its decision Congress had enacted the Omnibus Budget Reconciliation Act of 1981 which mandated states to include stepparent income in determining eligibility for AFDC benefits. (*Wood* v. *Woods, supra,* 133 Cal.App.3d at pp. 962-963; 42 U.S.C. § 602(a)(31).)

Nevertheless, section 5127.6, if interpreted as urged by husband, would discriminate against custodial parents in another way. It conclusively presumes that all custodial parents have available a community interest in their spouse's income to satisfy support obligations. Noncustodial parents have no such presumption imposed upon them.

Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution have been interpreted to provide that a state statutory classification that does not infringe upon a fundamental right or discriminate against a suspect class, will be upheld unless it bears no rational relationship to a legitimate governmental objective. (*Califano* v. *Aznavorian* (1978) 439 U.S. 170, 174-175 [58 L.Ed.2d 435, 440, 99 S.Ct. 471]; *Hays* v. *Wood* (1979) 25 Cal.3d 772, 786 [160 Cal.Rptr. 102, 603 P.2d 19]; *Reece* v. *Alcoholic Bev. etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, 679 [134 Cal.Rptr. 698].) We can discern no fundamental right or suspect class impaired by this statute. The statute must, therefore, be considered under the "rational relationship" test.

The "rational relationship" test is considered the weakest of the several levels of constitutional scrutiny. Yet, the test is not without substance. The California Supreme Court has recently stated that *any* discrimination by the state between persons must be based "*upon 'some reasonable differentiation fairly related to the object of regulation.'*" (*Hays* v. *Wood, supra,* 25 Cal.3d 772, 786, citations omitted.) Assessment of classifications under this test requires " ' "a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals." ' " (*Id.,* at p. 787, citation omitted.)

We are unable to find any rational basis for distinguishing between all custodial and noncustodial parents for the purpose of presuming the availability of additional assets for their child's support. Each parent has equal responsibility for the support of his or her child. (Civ. Code, § 196.) The assets of both parents, including their existing community property interest in their spouse's income, is taken into consideration when determining their separate child support obligations. (Civ. Code, § 246; *In re Marriage of Brown, supra,* 99 Cal.App.3d 702; *In re Marriage of Havens* (1981) 125 Cal.App.3d 1012, 1015 [178 Cal.Rptr. 477].)

The only plausible purpose the Legislature could have sought to achieve by including all custodial parents within the statute's purview was that of compliance with federal guidelines for determination of eligibility for AFDC. Yet, the federal requirement that all states presuming availability of stepparent income impose a duty of support on *all* stepparents is not served by this questionable classification; nor did the statute even meet this purported goal. (See *Wood* v. *Woods, supra,* 133 Cal.App.3d 954.)

Were we to interpret this statute as husband suggests, we would have no choice but to find that it violates equal protection. However, because we can reasonably construe section 5127.6 to apply only to those currently receiving AFDC benefits and to applicants for AFDC benefits, the statute will withstand constitutional scrutiny. ■ We, therefore, follow the well settled principle that a statute will not be held void if a reasonable construction can bring it within constitutional limitations. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 244 [158 Cal.Rptr. 330, 599 P.2d 636]; *Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 145 [109 Cal.Rptr. 897, 514 P.2d 697].)

■ We note, again, that the statute's main purpose was to presume availability of stepparent income for custodial parents receiving AFDC benefits. The language of section 5127.6 which provides that the community property interest shall be "considered unconditionally available," clearly denotes that it will be deemed available for the purpose of making some calculation, not that it is in fact available. Just as obviously it cannot mean that it should be so considered for purposes of calculating the obligation of the noncustodial spouse, for to do so would not only create inequality between the spouses by imposing a greater obligation on the custodial parent than on the noncustodial parent, but would directly conflict with other statutory provisions relating to parental obligations. (See, e.g., Civ. Code, § 196.) The reasonable interpretation of this language, and the interpretation that sustains the statute's validity, is that such presumption is for the purpose of calculating AFDC benefits.

Thus narrowed, the statute easily passes constitutional muster. The Legislature could have rationally determined that the administration of state AFDC funds would be better facilitated by restricting the statute's application to the families directly receiving or applying for AFDC benefits. In this way the state would be able to limit its administrative expenditures to monitoring these custodial families. To include noncustodial parents within this statute would require additional administrative costs and carry the presumption to such an unrealistic extreme that truly needy children might go without support. (See *Camp* v. *Swoap, supra,* 94 Cal.App.3d 733.)[3]

■ Because plaintiff is not receiving, nor has she applied for, AFDC benefits, she falls outside the provisions of section 5127.6. Therefore, evidence of her amended premarital agreement with Dr. Chapman was properly admitted

---

[3]Plaintiffs in *Swoap* were AFDC recipients who claimed that section 5127.5 violated due process by presuming available, for purposes of calculating AFDC eligibility and benefits, income of the stepparent not actually available. The court found that the statutory presumption was "reasonably related to legitimate interests in administrative economy and certainty of coverage for those who meet its terms" (94 Cal.App.3d at p. 740), and, thus, upheld its validity. The court was not confronted with the much broader question of whether this same presumption could constitutionally be construed to apply to non-AFDC recipients.

at trial. The trial court did not abuse its discretion by ruling inadmissible as irrelevant Dr. Chapman's income.

### IV.

■ Husband next contends that the court erred in increasing his child support payments because the requisite finding of a change in circumstances was not made. There is no conceivable basis upon which we would overturn, as an abuse of discretion, the trial court's finding that it costs more to support a child of 10 in 1981 than it did to support a child of 2 in 1973. ■ Husband cannot avoid his duty to contribute a reasonable amount to the support of his child on grounds that the child's mother could provide for their child's entire support if provided with no alternative. (Civ. Code, §§ 196, 246; *In re Marriage of Havens, supra,* 125 Cal.App.3d 1012, 1015.) ■ The court took each parent's income and expenses into consideration and ordered husband to contribute $250 per month to his child's support. This was a proper exercise of the court's discretion.

### V.

■ Wife, acting in pro. per., filed a reply brief in which she responded to husband's arguments. She also raised several issues of her own which we must treat as a cross-appeal. Because wife never filed notice of her cross-appeal, we have no jurisdiction to consider these additional issues. (Cal. Rules of Court, rule 3(c).) We note, however, that the issues raised by wife: 1) insufficient increase in support and, 2) refusal to award attorney's fees, are within the trial court's discretion. The court's discretionary ruling would have been overturned only on a showing of manifest injustice. (*In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495], app. dism., 439 U.S. 1060 [59 L.Ed.2d 26, 99 S.Ct. 822].)

The judgment is affirmed.

McDaniel, J., and Rickles, J., concurred.

A petition for a rehearing was denied March 8, 1983, and appellant's petition for a hearing by the Supreme Court was denied April 13, 1983.